658 So.2d 863 (1995)
Timothy HAYES
v.
Zeffie Lee ROUNDS, Alter B. Caldwell, Sarah Caldwell and Department of Vital Records.
No. 94-CA-00151-SCT.
Supreme Court of Mississippi.
July 20, 1995.
Ruby White and Patricia A. Krueger, Grenada, Minnie P. Howard, Batesville, for appellant.
A.E. (Rusty) Harlow, Jr., Harlow & Harlow, Grenada, for appellee.
Before PRATHER, P.J., and BANKS and SMITH, JJ.
BANKS, Justice, for the Court:
In this custody case, it is unclear how the court found that the best interest of the child was served by granting custody to the mother. We reverse and remand for specific findings of fact and conclusions of law using the Albright factors.

I.
On September 1, 1993, Timothy Hayes (Hayes) filed a complaint in the Grenada County Chancery Court against Zeffie Rounds (Zeffie) seeking to establish that he is the natural father of minor, Timothy Cortez Rounds (Timothy), and seeking to obtain custody of Timothy. In her response to the complaint, Zeffie admitted that Hayes was Timothy's father, but, Zeffie cross-claimed that she should be granted custody of Timothy and an appropriate amount of child support. On January 11, 1994, the case went to trial. Timothy was three years old at the time.
Alter Caldwell, Zeffie's father, testified as an adverse witness for Hayes. According to him, after Timothy was born, Timothy and Zeffie lived with him and his wife in Grenada, Mississippi for approximately a month. Thereafter, Zeffie left Timothy in their care so that she could return to a Job Corps training course in Georgia. She returned to Grenada when she finished her training but stayed less than a year. She went to Atlanta to secure a job and promised that she would *864 return for Timothy after she did so. Although she found a job, Zeffie never returned for Timothy. As a result, Timothy has been residing with Caldwell and his wife since he was born. Although she did so seldomly, Zeffie did return home to visit. When Zeffie and Timothy spent time together, they seemed to enjoy each other, and when asked, Timothy informed Caldwell that he wanted to be with his mother.
Hayes always showed an interest in Timothy, and visited with him nearly every week. Caldwell stated that on one occasion, when Caldwell's wife was sick after having suffered a light stroke, Timothy stayed with Hayes and Hayes' mother for two or three weeks. Hayes and his mother, Alma Hayes, testified that he in fact kept Timothy for four months while Mrs. Caldwell was indisposed. In July 1993, Caldwell and his wife had a discussion with Zeffie about their adopting Timothy. Although she agreed to the adoption, Hayes did not. At some time prior to the trial, here and after Caldwell and his wife were unable to adopt Timothy, Zeffie informed Caldwell that Timothy would be moving back to Georgia with her.
After Caldwell completed his testimony, Hayes testified in his own behalf. A summary of his testimony is as follows. He is married and resides in Grenada with his wife and two children, aged seven months and four years old. His wife bathes Timothy, plays with him, taught him his alphabet, and loves him as if he were her own. Hayes bought clothes, diapers, milk, and toys for Timothy. He testified that he offered to pay money to the Caldwells, but they decided against any direct monetary assistance. He kept Timothy anywhere from a weekend to two weeks, spent time playing with Timothy, and took him to church on a regular basis. Hayes has a host of other relatives that spend time with Timothy and reside in Grenada, including sisters, brothers, nieces, nephews, uncles, and his mother.
In 1992 Hayes became engaged to his present wife. When Zeffie learned of the engagement, she contacted him and wanted to resume their relationship. When he refused Zeffie's request, she told him that if he was not going to be with her, he wasn't going to be with his son either. Zeffie picked up Timothy and took him back to Georgia with her; but returned him to her parents after about four weeks.
At the time of trial, Hayes had been employed at Hankins Lumber Company for two years. He lived in a one-bedroom duplex. He, his wife, and the baby slept in one bedroom while the oldest child slept on a fold-out couch. He was in the process of looking for a bigger house and felt that he was able to feed, clothe and provide for Timothy.
Sarah Caldwell, Zeffie's mother, testified in Zeffie's behalf at trial. She stated that after Zeffie finished Job Corp, she entered a nurses training course and worked as a nurses' assistant in Atlanta. Some months, Zeffie sent her $25.00 to $30.00 for Timothy. Zeffie visited them about four or five times in 1991, recalled Sarah, for periods lasting from a few days to a week. Sarah also recalled that Zeffie cared for Timothy for four months by herself in Atlanta. Sarah testified that Zeffie's husband had neither met Timothy, nor her and Mr. Caldwell prior to trial.
Zeffie testified that she was eighteen years old when Timothy was born, and was twenty-two years old at the time of trial. She had a GED, and six months of nurses training. At the time of trial she had been employed at the Atlanta Marriott Marquise hotel as a housekeeper for approximately one year, had a health insurance policy that also covered Timothy, and earned $246.00 a week. Prior to working at the hotel, she worked at a nursing home for approximately six months. Before that job, and after receiving Job Corps training, she was unemployed and lived with a man named Corey Jackson, her boyfriend at the time. The two lived together for approximately nine weeks. Although she testified that she married an Atlanta police officer named Charlie Davis a couple of months before the trial, she contradicted herself on cross-examination when she admitted that they married on December 30, 1993, approximately two weeks prior to trial. She stated that she and her husband rented a townhouse with two bedrooms, and one and one-half baths. She felt that she and her husband were fully capable of caring for Timothy, and her husband was willing to be a *865 stepparent to Timothy. A child care facility is located in the complex where she lives, and Zeffie planned to place Timothy in day care from 8:30 to 4:30 while she worked. Her husband did not attend the trial or testify.
Zeffie alleges that she did not attempt to take Timothy to Georgia prior to trial because she wanted to wait until she was settled. She alleged that she only agreed to let her parents adopt Timothy because they informed her that Hayes wasn't doing anything for the child and they needed some money for him.
After the conclusion of testimony, the court rendered an opinion from the bench. The court observed that Hayes had not proven that Zeffie abandoned Timothy or that she was morally unfit to have custody of him. The court held that after examining and evaluating all of the Albright factors, custody was proper with Zeffie and custody was so granted with Hayes receiving visitation rights. In its later written opinion, the court stated that it was in the best interest of Timothy that custody be placed in Zeffie. Neither the oral nor the written opinion provided specific findings with regard to the Albright factors. Hayes filed a notice of appeal on February 10, 1994.

II.
Hayes argues that the court's grant of child custody should be reversed because the court used improper standards in its analysis and because the grant of child custody was against the overwhelming weight of evidence.
Although the court did not use the exact language "best interests of the child" in its oral pronouncement of decision, and although the court referred to her as the "proper person" to have custody, Zeffie argues that the language used in its opinion clearly showed that the decision was based upon the factors enunciated in Albright v. Albright, 437 So.2d 1003 (Miss. 1983). Zeffie contends that the court's recognition of the Albright factors is evinced in its language: "I have examined all the factors that are involved in the Albright decision, in deciding the custody of Timothy Cortez Rounds, and when I evaluated all of these factors, it was my decision that the custody would be proper with his mother... ." This language, asserts Zeffie, amounted to a paraphrase of the best interest rule. As authority for this contention, Zeffie cites Carr v. Carr, 480 So.2d 1120, 1123 (Miss. 1985) (trial court's statement that it was concerned with "what will most effectively enhance the growth and development of the children from a moral, emotional and physical standpoint" sufficiently showed acknowledgment and application of the Albright factors).
The polestar consideration in all original child custody determinations is the best interest and welfare of the child. Albright, 437 So.2d at 1004; Carr, 480 So.2d at 1123; Gambrell v. Gambrell, 644 So.2d 435, 441 (Miss. 1994). When rendering its judgment in open court the court stated:
[t]he plaintiff has not met his burden of proof in proving that the mother of this child, Zeffie Davis, has abandoned the child, or is morally unfit to have the custody of this child. Therefore, based on that, I have examined all the factors that are involved in the Albright decision in deciding the custody of Timothy Cortez Rounds, and when I evaluated all of those factors, it was my decision that the custody would be proper with his mother, and I am going to award custody with his mother, Zeffie Davis.
Although the court explicitly acknowledged that the Albright factors apply to the present case, it is not clear whether the court properly applied the factors. As Hayes contends, the court first inappropriately alluded to a requirement that Hayes prove abandonment. As a natural parent, Hayes was not required to prove either moral unfitness or abandonment on behalf of Zeffie in order to obtain custody. That burden must be satisfied only in custody cases between a natural parent and a third party. Moody v. Moody, 211 So.2d 842, 844 (Miss. 1968); Carter v. Taylor, 611 So.2d 874, 877 (Miss. 1992).
Furthermore, an application of the Albright factors to the facts established here, appears to favor Hayes as custodian of the child.

*866 Health and Sex. At the time of trial, Timothy was a healthy three year old boy.

Continuity of Care. Although Timothy resided with the Caldwells, Hayes, who lived in the same city, kept Timothy on occasion, provided food, clothing, and toys, and saw him frequently. Zeffie, resided in Atlanta, saw Timothy rarely, and sporadically sent money to the Caldwell's for his care.

Parenting Skills & Capacity to Provide Primary Child Care. Hayes previously kept Timothy for four months and he and his wife regularly spent time with Timothy on weekends. His care for Timothy obviously strengthened his emotional ties with Timothy. Zeffie, however, spent little time with Timothy, was going to allow her parents to adopt Timothy only two months before trial, and appeared to use Timothy as a tool against Hayes. Her husband had never met Timothy. Both appear to have the capacity to support Timothy. In addition, both are healthy people who, from the record appear to be morally fit to have custody.

Employment. Hayes was employed at a lumber company for two years. Zeffie was employed as a housekeeper for one year at a higher base salary. Zeffie appears to have an economic edge for the present which may be addressed in the child support award.
While we cannot say that the chancellor's conclusion is so lacking in evidentiary support as to be manifest error, in the absence of specific findings we cannot affirm with confidence that the best result has been reached. Because it is unclear how the court found that the best interest of Timothy was served by placing custody in Zeffie, the court alluded to an inappropriate analysis regarding abandonment, and there are no specific findings applying the Albright factors, we conclude that the best course is to reverse and remand this case for the chancellor to provide specific findings of fact and conclusions of law using the Albright analysis. Tricon Metals & Services, Inc. v. Topp, 516 So.2d 236 (Miss. 1987).
REVERSED AND REMANDED.
HAWKINS, C.J., DAN M. LEE and PRATHER, P.JJ., and SULLIVAN, PITTMAN, McRAE and SMITH, JJ., concur.
JAMES L. ROBERTS, Jr., J., concurs in result only.