# IN THE SUPREME COURT OF MISSISSIPPI
## NO. 1998-CA-01259-SCT

*MARGARET LEWIS PRESLAR SOBIESKE*

*v.*

*RICKY GENE PRESLAR*

| | |
|---|---|
| DATE OF JUDGMENT: | 07/02/1998 |
| TRIAL JUDGE: | HON. CHARLES D. THOMAS |
| COURT FROM WHICH APPEALED: | ALCORN COUNTY CHANCERY COURT |
| FOR APPELLANT: | REBECCA C. PHIPPS |
| FOR APPELLEE: | PHIL R. HINTON |
| NATURE OF THE CASE: | CIVIL - DOMESTIC RELATIONS |
| DISPOSITION: | AFFIRMED - 01/27/2000 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | 2/17/2000 |

## EN BANC.

## PRATHER, CHIEF JUSTICE, FOR THE COURT:

### STATEMENT OF THE FACTS AND CASE

¶1. Margaret Sobieske ("Margaret") and Ricky Preslar ("Ricky") were divorced on January 3, 1996 on grounds of irreconcilable differences. In his decree granting the divorce, the Chancellor approved and incorporated a written agreement providing for joint legal and physical custody of the couple's only child, Carley, a female born in 1992. This arrangement worked reasonably well until Margaret remarried and her husband was transferred to Atlanta, Georgia in 1997.

¶2. On August 22, 1997, Margaret filed for a modification of the divorce decree, seeking primary custody of Carley. Six days later, Ricky filed a counter-complaint, also seeking primary custody of the little girl. On July 8, 1998, the Chancellor issued a ruling granting primary custody of Carley to Ricky and directing the parties to work out a visitation schedule with "liberal" visitation rights in favor of Margaret. The Chancellor further required that Margaret pay 14 % of her adjusted gross income to Ricky in child support for Carley, and he directed that both parties maintain medical insurance in favor of the child. Following the Chancellor's denial of a motion to reconsider, Margaret appealed to this Court.

### LAW

**Whether the trial court should have awarded the primary legal and physical custody of the minor child to the father**.

¶3. The instant appeal requires this Court to determine whether the Chancellor was manifestly in error in awarding custody of Carley to Ricky. In *Albright v. Albright*, 437 So.2d 1003 (Miss. 1983) this Court held that:

> We reaffirm the rule that the polestar consideration in child custody cases is the best interest and welfare of the child. The age of the child is subordinated to that rule and is but one factor to be considered. Age should carry no greater weight than other factors to be considered, such as: health, and sex of the child; a determination of the parent that has had the continuity of care prior to the separation; which has the best parenting skills and which has the willingness and capacity to provide primary child care; the employment of the parent and responsibilities of that employment; physical and mental health and age of the parents; emotional ties of parent and child; moral fitness of parents; the home, school and community record of the child; the preference of the child at the age sufficient to express a preference by law; stability of home environment and employment of each parent, and other factors relevant to the parent-child relationship.

*Albright*, 437 So.2d at 1005.

¶4. The Chancellor did not expressly make any findings in his ruling as to the *Albright* factors, merely writing that:

> Considering the factors set forth in *Albright*, it appears that both parents have the desire and capacity to have the primary custody of Carley, however, Carley has close ties to the home she has lived in since birth as well as to her friends and family in Alcorn County, Mississippi. Carley has close ties to Mrs. Sobieske's twin sister, Mary Allred, and to Ms. Allred's daughter, Meagan, who is approximately the same age as Carley. Carley also has, in Alcorn County, other family and friends who she is close to. Mrs. Sobieske and her new husband are living in Atlanta, Georgia, and since Carley does not have any other family in that area, there are uncertainties for her there.

While it certainly would have been preferable for the Chancellor to have expressly considered each *Albright* factor, it is perhaps understandable that he did not do so in the present case, given that the testimony established that both Ricky and Margaret were fit and loving parents. The Chancellor's ruling appears to recognize that both parents are fit under *Albright*, and the Chancellor based his ruling primarily on which geographical location he felt would be most suitable for Carley.

¶5. Both Ricky and Margaret conceded in their testimony that the other was a good and responsible parent. Margaret did have some complaints regarding Ricky's parenting, however, testifying that he was often late in picking up Carley for visitation and that he sometimes purchased clothes for Carley which were too big. Ricky also acknowledged that Margaret was a good parent, but he testified that, in his opinion, she would sometimes "put her own personal wants and needs in front of what was in the best interest of her child."

¶6. Other witnesses testified that both Ricky and Margaret were good parents, although the witnesses did disagree as to which parent would be most suitable as primary custodian of Carley. Sherron Rinehart, Margaret's sister, testified that while both Ricky and Margaret were good parents, she felt that Margaret would be the better parent because "I'm a mother, and I know the bond that a mother and daughter has." Interestingly, another of Margaret's sister's testified that she felt that Ricky had been the better parent to Carley. Specifically, Mary Allred, Margaret's twin sister, testified that while both were good parents, she felt that Ricky had demonstrated greater parenting skills and would be better suited to care for Carley than

her sister.

¶7. Margaret places substantial emphasis on the argument that, as a male, Ricky would not be as suitable to raise a little girl. Ricky, however, presented testimony that Carley often had female assistance and companionship during her visits with him. Robin Chapman, Ricky's girlfriend of two years, testified that often assisted Carley in trips to the bathroom, as well as in shopping for clothes, and that she sometimes babysat Carley when Ricky was working late. Chapman also testified that she and Ricky were very likely to get married soon, although Ricky's testimony was less definite in this regard. Margaret's twin sister, Mary Allred, testified that she had often cared for Carley when Ricky was forced to work late, and she indicated that she wished to continue to do so if Ricky were granted primary custody.

¶8. A significant portion of the testimony at trial centered around the living conditions that Carley would face in both Atlanta and Corinth. Margaret testified that she and her new husband, Steve Sobieske, would be living in Roswell, a suburb of Atlanta. Margaret testified that she chose Roswell in large part due to its excellent schools, and she notes that her job as a computer consultant would only require her to work from 8:00 a.m. to 4:30 p.m. However, Steve conceded that the Atlanta area had a higher crime rate than Corinth, and all parties acknowledge that Carley has more friends and relatives in the Corinth area than in Atlanta.

¶9. Ricky testified that Carley attended a private, church-affiliated kindergarten in Corinth and that he and his ex-wife shared the education expenses evenly. Ricky acknowledged that he was, at times, forced to work relatively long hours, testifying that he worked as a manager at Kroger's from eight to five during the week, from three to midnight every Saturday, and from eight to five on one out of every three Sundays. As noted *supra*, however, Ricky presented testimony that he was assisted in taking care of Carley by friends such as Chapman and Allred.

## CONCLUSION

¶10. In the present appeal, two of the *Albright* factors undisputably favor Margaret: the age and sex of the child. Carley is female and was born in 1992. However, it is also clear that the age and sex of a child are merely factors to be considered under *Albright*, and this Court has significantly weakened the once strong presumption that a mother is generally best suited to raise a young child. This Court stated in *Mercier v. Mercier*, 717 So.2d 304, 307 (Miss. 1998) that:

> The tender years doctrine has been gradually weakened in Mississippi jurisprudence to the point of now being only a presumption. *Law v. Page*, 618 So.2d 96, 101 (Miss. 1993). Today, the age of a child is simply one of the factors that we consider in determining the best interests of the child.

¶11. This Court must also be mindful of the deferential standard which we employ on appellate review. The Chancellor had the benefit of being able to evaluate personally the testimony of the witnesses, and he clearly agonized over his decision, writing in his ruling that:

> This Court has not experienced a case where the Court has been more troubled in reaching a solution to the problem created by the facts.

The central fact of the present case seems to be beyond dispute: both Margaret and Ricky love and care for their daughter, and there is no basis in the record for concluding that either party is an unfit parent.

¶12. In light of this central fact, and considering the deference which this Court must show to the Chancellor in the exercise of his discretion, this Court concludes that the Chancellor's ruling should be affirmed. This Court would have greater confidence in the Chancellor's ruling if he had expressly considered the *Albright* factors, but it can be inferred from his citation to *Albright* that he felt that both parents were fit under *Albright*, and we can not say that he abused his discretion in emphasizing that Carley has more friends and relatives in the Corinth area and in awarding custody to Ricky, at least in part, on this basis.

¶13. The judgment of the Alcorn County Chancery Court is affirmed.

¶14. **AFFIRMED.**

**SULLIVAN, P.J., BANKS, McRAE AND MILLS, JJ., CONCUR; COBB, J., CONCURS IN PART. WALLER, J., DISSENTS WITH SEPARATE WRITTEN OPINION JOINED BY PITTMAN, P.J., AND SMITH, J.; COBB, J., JOINS IN PART.**

**WALLER, JUSTICE, DISSENTING:**

¶15. Because the chancellor failed to consider expressly and specifically all of the relevant *Albright* factors, *Albright v. Albright*, 437 So. 2d 1003, 1005 (Miss. 1983), I respectfully dissent.

¶16. The *Albright* factors are as follows:

1. Age, health, and sex of the child;

2. Continuity of care prior to the separation;

3. Parenting skills and willingness and capacity to provide primary child care;

4. Employment of the parent and responsibilities of that employment;

5. Physical and mental health and age of the parents;

6. Emotional ties of parent and child;

7. Moral fitness of parents;

8. Home, school and community record of the child;

9. Preference of the child at the age sufficient to express a preference by law;

10. Stability of home environment; and

11. Other factors relevant to the parent-child relationship.

*Albright* at 1005. The polestar consideration in custody matters is the best interest and welfare of the child, and all of the *Albright* factors should be employed in the furtherance of that determination. *Id.*

¶17. In awarding custody to the father, the chancellor made the following findings:

Since the divorce of the parties, until the end of 1997, the parties have equally shared in time spent with the child and each can be said to have the continuity of care. Both have good parenting skills and a willingness and capacity to provide for Carley Renea Preslar. Both parents are morally fit and the child is both physically and mentally healthy and has close emotional ties to both parents. Carley Renea Preslar has a good record in her home, kindergarten, and community.

Considering the factors set forth in *Albright*, it appears that both parents have the desire and the capacity to have the primary custody of Carley, however, Carley has close ties to the home she has lived in since birth as well as her friends and family in Alcorn County, Mississippi. Carley has close ties to Mrs. Sobieske's twin sister, Mary Allred, and to Ms. Allred's daughter, Meagan, who is approximately the same age as Carley. Carley also has, in Alcorn County, other family and friends who she is close to. Mrs. Sobieske and her new husband are living in Atlanta, Georgia, and since Carley does not have any other family in that area, there are uncertainties for her there.

The final judgment reveals that the chancellor implicitly considered factors 2, 3, 5, 6, 7, and 10 to weigh in favor of both parents equally. However, precedent requires the chancellor to not only make express findings, but also to make specific findings in applying the *Albright* factors. *Hayes v. Rounds*, 658 So. 2d 863, 866 (Miss. 1995). In *Hayes* we stated:

While we cannot say that the chancellor's conclusion is so lacking in evidentiary support as to be manifest error, in the absence of specific findings we cannot affirm with confidence that the best result has been reached. Because it is unclear how the court found that the best interest of Timothy was served by placing custody in Zeffie, the court alluded to an inappropriate analysis regarding abandonment, and there are no specific findings applying the *Albright* factors, we conclude that the best course is to reverse and remand this case for the chancellor to provide specific findings of fact and conclusions of law using the *Albright* analysis.

*Id.* at 866 (citing *Tricon Metals & Servs., Inc. v. Topp*, 516 So. 2d 236 (Miss. 1987)).

¶18. Notably absent from the judgment is *any* discussion of Carley's age and sex, the first factor in *Albright*, and the employment of the parents and the responsibilities of that employment, the fourth factor in *Albright*. An application of those two factors favors Sobieske as custodian of the child.

¶19. *Age, health, and sex of the child.* At the time of the hearing, Carley, a healthy female, was five years old.

¶20. *Employment of the parents and responsibilities of that employment.* Sobieske had previously been employed by Caterpillar, Inc. as a computer network administrator, earning $32,000 a year, and working Monday through Friday 8:00 a.m. to 4:30 p.m. Upon her move to the Atlanta area, she will employed by C.D.I. Information Services, Inc., as a technical computer course instructor, with a starting salary of $42,000 a year, working Monday through Friday from 8:00 a.m. to 4:30 p.m. Sobieske has remarried and her present husband earns $55,000 a year. Preslar was a customer service manager at Kroger in Corinth where he worked one to two nights a week until 11:00 p.m., two out of every three Saturdays until midnight, and 8:00 a.m. to 5:00 p.m. one out of every three Sundays. Preslar leaves Carley with his girlfriend or Sobieske's twin sister when he works these late hours.

¶21. This is a close case, and I agree with the chancellor, although he made no specific findings, that most

of the factors favor both parents equally. Indeed, the chancellor stated that "this court has not experienced a case where the court has been more troubled in reaching a solution to the problems created by the facts." This only evinces a need for the chancellor to have expressly and specifically considered all of the factors. The chancellor seems to have placed great weight on the fact that Carley has close ties to her home, friends, and relatives in Corinth, a possible application of factors 8 and 10. However, I do not believe that the scales should have been tilted in favor of the father on those two factors where factors 1 and 4, Carley's age, sex, and the parents' job responsibilities, respectively, clearly weigh in favor of the mother and were not expressly and specifically considered. All factors being otherwise equal, Sobieske should not have been punished for desiring to go with her current husband to his new job in Atlanta. I take note that we live in an increasingly mobile society where job transfers are commonplace.

¶22. Because granting custody to Sobieske would obviously place a burden on Preslar's visitation rights, most of the financial and time considerations could be equitably placed on Sobieske to facilitate liberal visitation. Sobieske would have an incentive to carry more of the burden since it is her family which remains in Corinth.

¶23. Because I remain unconvinced that this father is the better choice to raise this young female child and because of the absence of specific findings on the relevant *Albright* factors, I do not believe that the best result has been reached.

¶24. Accordingly, I respectfully dissent.

**PITTMAN, P.J., AND SMITH, J., JOIN; COBB, J., JOINS IN PART.**