BRIDGES, J.,
for the Court:
¶ 1. In June 1997, the Chancery Court of Warren County granted Randolph Anthony Jones and Theresa Lee Jones a divorce on irreconcilable differences. A property settlement agreement signed by both parties was incorporated into the final judgment of divorce. Theresa filed a motion[1] for citation of contempt on June 29, 1998, alleging that Randolph failed to comply with certain provisions of the property settlement agreement. Randolph then filed a counter motion[2] alleging that Theresa was also in contempt of the agreement. The chancellor denied both motions but did require Randolph to convey his half interest in the marital home to Theresa pursuant to the property settlement agreement. Aggrieved with the chancellor’s decision, Randolph appeals arguing the following assignment of error
*566 I. WHETHER THE CHANCELLOR’S RULING THAT THE COUNTER-CLAIM FOR CONTEMPT AS FILED BY RANDOLPH ANTHONY JONES BE DISMISSED WAS CLEARLY ERRONEOUS.
¶ 2. After a thorough review of the record, we find no merit to this issue. Accordingly, we affirm.
FACTS
¶ 3. On June 19, 1993, Randolph and Theresa were married in Vicksburg, Mississippi. In April 1997, the parties filed a joint complaint for divorce and subsequently entered into a property settlement and separation agreement. The Warren County Chancery Court awarded the parties a divorce on irreconcilable differences, and the property settlement and separation agreement was incorporated into the final judgment. The agreement had several provisions that dealt with the Joneses’ personal and real property which included construction costs on the parties’ new home.
¶ 4. During the time the parties were married and prior to their separation, they began construction on a new home. The cost of the house was initially estimated at $150,000. Randolph, who was the general contractor for the construction of the house, testified at trial that the total cost for the house was $220,000. To finance the construction, the parties applied for and were granted a loan for $200,000 which was to cover the initial $150,000 estimate. Both parties signed for and were liable for the loan. During construction of the house, Randolph drew on the loan in order to finance construction costs. In May 1997, Randolph signed an affidavit stating that all construction costs had been paid in full. The house was finally completed in September 1997, but the parties at this time were divorced. Theresa moved into the house in the spring of 1997 and has continued to reside there since. ¶ 5. The property settlement agreement incorporated into the final judgment of divorce provided that Theresa had one year from and after the date of the agreement, to remove Randolph from any and all debt obligations associated with the cost of construction of the home, including, but not limited to, any promissory notes, mortgages and/or deeds of trust upon which the home may be pledged as security. If these provisions were met, Randolph was to quitclaim his interest in the home to Theresa. In order to comply with this provision, Theresa made arrangements with the bank to assume sole responsibility for their loan. In order to finalize this transaction with the bank, Theresa needed a quitclaim deed from Randolph that conveyed his interest in the house. However, Randolph alleged that Theresa still owed $27,000 of unpaid costs still existing from the construction of the house. He, therefore, refused to quitclaim his interest in the house. Theresa then filed a motion for citation of contempt to require Randolph to convey his interest in the home to her. Randolph also filed a counter motion for contempt claiming that Theresa had failed to comply with the property settlement agreement. The chancellor found that there were no unpaid construction costs and that Theresa had complied with the property settlement agreement. The chancellor found the agreement to be vague and ambiguous and therefore denied both motions for contempt. However, finding that Theresa did not owe any additional money for construction costs and had complied with all specific provisions of the agreement, the chancellor ordered that Randolph fulfill his part of the property settlement agreement by quitclaiming his interest in the house to Theresa. Aggrieved with this decision, Randolph has perfected this appeal.
ARGUMENT AND DISCUSSION OF LAW

Standard of Review

¶ 6. This Court’s standard of review for all appeals involving domestic relations *567 cases is well-established. “Our scope of review in domestic relations matters is limited by our familiar substantial evidence/manifest error rule.” Magee v. Magee, 661 So.2d 1117, 1122 (Miss.1995). An appellate court may reverse a chancellor’s finding of fact only when there is not “substantial, credible evidence” justifying his finding. Williams v. Rembert, 654 So.2d 26, 28 (Miss.1995)(quoting Snow Lake Shores Property Owners Corp. v. Smith, 610 So.2d 357, 360 (Miss.1992)).
I. WHETHER THE CHANCELLOR’S RULING THAT THE COUNTER-CLAIM FOR CONTEMPT AS FILED BY RANDOLPH ANTHONY JONES BE DISMISSED WAS CLEARLY ERRONEOUS.
A. Whether a property settlement agreement is a contract between a husband and wife and interpretation of that agreement should follow contract remedies. Whether the agreement in this case was vague and ambiguous and should be construed strongly in favor of Mr. Jones, the non-drafting party.
B. Whether the intent of the parties was that Ms. Lee was to be responsible for all debt associated with the construction of a home by the parties and whether this debt included $27,000 incurred by Mr. Jones during the time of construction.
¶ 7. Randolph argues that because the chancellor found the property settlement agreement to be vague and ambiguous, then the chancellor must make a determination as to the intent of the parties. Randolph contends that the chancellor did not make a determination as to the intent of the parties regarding the $27,000 debt claimed by Randolph. He further maintains that the evidence presented at trial indicated that Theresa was aware of the debt; therefore, the chancellor was clearly erroneous in dismissing Randolph’s counter-motion for contempt. Theresa argues that the chancellor correctly determined that Theresa had paid all debts and honored her part of the property settlement agreement. She maintains that the chancellor did not abuse her discretion or apply incorrect law and her decision is supported by sufficient evidence.
¶8. In the case sub judice, the chancellor made extensive findings of fact and conclusions of law. After a thorough review of the record, this Court finds that there is substantial, credible evidence to support the chancellor’s decision. First, the chancellor looked at the property settlement agreement and determined that the language of the agreement was not clear and free from ambiguity and concluded that the court must consider the intent of the parties. Although Randolph argues that the chancellor failed to make a determination of the intent of the parties, a review of the record shows that the chancellor did determine the parties intent. The chancellor looked at the provisions of the property settlement agreement and considered both parties testimony regarding who was to pay personal debt and construction costs. After considering the testimony, the chancellor noted that Randolph admitted that Theresa had paid everything that was specifically mandated by the property settlement agreement. The chancellor then concluded that Theresa did not owe Randolph any additional money for the construction of the house.
¶ 9. There is sufficient evidence to support this finding. The property settlement agreement gives Theresa one year to remove Randolph from any and all debt obligations associated with the cost of construction of the home. The chancellor concluded that this language was unclear. The evidence supports this conclusion in that the agreement does not contain an exact figure for the total amount of construction costs. Although the agreement does not state an exact figure for construction costs, the record shows that Theresa did make payments on these costs. Theresa’s testimony reflects that she used her bonds, savings, and investments to pay $45,000 to $50,000 to build *568 ing suppliers. She further testified that from her personal funds she paid $28,000 directly to Randolph for debts incurred on the construction of the house. The agreement specifically called for Theresa to pay the MasterCard bill, which she did, in the exact amount of $4,136.41. Further, Randolph testified that Theresa had paid all costs specifically mandated in the agreement. Randolph is arguing on appeal that Theresa still owes him $27,000 for construction costs, yet the record shows no evidence of any specific costs or bills that have gone unpaid. Acting as the general contractor, Randolph was in charge of all construction on the house which included paying the construction bills. However, he presented no evidence at trial on which specific bills had not been paid, nor did he present any bills that had been paid that Theresa should reimburse. After reviewing the recorded testimony, we find that there was no evidence presented to show what construction bills that the amount of $27,000 actually represented. Further, the record does show that Theresa did pay additional amounts of money on construction costs. Accordingly, there is sufficient credible evidence to support the chancellor’s finding that Theresa did not owe Randolph any additional construction costs.
¶ 10. Next, the chancellor considered the matter of contempt. The chancellor cited Banks v. Banks which explained contempt and the various defenses to a contempt charge. Banks v. Banks, 648 So.2d 1116, 1123 (Miss.1994). These defenses included an “honest inability to perform according to the dictates of the decree” and an “inability to obey an order which is vague or not sufficiently specific.” Id. (quoting Smith v. Smith, 545 So.2d 725, 727 (Miss.1989)). The chancellor found that the agreement was vague and ambiguous and based on the defenses in Banks, refused to find either party in contempt.
¶ 11. A citation for contempt is determined upon the facts of each case and is a matter for the trier of fact. Milam v. Milam, 509 So.2d 864, 866 (Miss.1987). A citation is proper when “the contemnor has willfully and deliberately ignored the order or the court.” Bredemeier v. Jackson, 689 So.2d 770, 777 (Miss.1997). Contempt matters are committed to the sound discretion of the trial court, and we will not reverse where the chancellor’s findings are supported by substantial credible evidence. Caldwell v. Caldwell, 579 So.2d 543, 545 (Miss.1991). The chancellor determined that the property settlement agreement was vague and ambiguous, and then the chancellor concluded that neither party was in contempt. We find that there is substantial credible evidence to support this finding and the chancellor did not abuse her discretion. Accordingly, this issue is without merit.
¶ 12. In affirming the chancellor’s decision, this Court agrees that the assignment of error raised by the appellant was an issue presented to the chancellor for decision in the lower court and was, therefore, properly preserved for appeal. Gray v. State, 728 So.2d 36, 37 (Miss.1998). We are denying the appellee’s request for attorney’s fees, and we also decline to sanction the appellant for a frivolous appeal. The judgment of the chancery court is affirmed.
¶ 13. THE JUDGMENT OF THE WARREN COUNTY CHANCERY COURT IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
McMILLIN, C.J., KING AND SOUTHWICK, P.JJ., DIAZ, IRVING, LEE, MOORE, PAYNE, AND THOMAS, JJ., CONCUR.

. The initiation of such actions should be by filing "complaints" or "petitions,” and "counterclaims" or "cross-claims” (whichever might be appropriate), not "motions” and "counter-motions” as was done in this case. See M.R.C.P. 81(d)(l-3), 81(f), and Comments to 81(d)(3) and 81(0.

. See footnote 1.