857 So.2d 786 (2003)
Marie GLASS, Appellant,
v.
Florence Edward GLASS, Appellee.
No. 2002-CA-01867-COA.
Court of Appeals of Mississippi.
October 21, 2003.
*787 Steven Detroy Settlemires, attorney for appellant.
Ronald Stephen Wright, Ackerman, attorney for appellee.
EN BANC.
LEE, J., for the Court.

PROCEDURAL HISTORY
¶ 1. Marie and Florence Edward Glass (Edward) were married in December 1985. Marie filed a complaint for divorce in December 2000 in the Neshoba County Chancery Court, plus filed a motion for temporary relief requesting alimony, among other things. Edward filed a counter complaint for divorce in April 2001.
¶ 2. In January 2001, the parties consented to an agreed temporary order whereby Marie was granted sole use of the marital home, Edward was ordered to pay both the first and second mortgages on the home, and Edward was ordered to pay Marie $1,000 per month as temporary alimony. Thereafter, Marie filed two motions for contempt for Edward's failure to abide by the terms of the temporary *788 agreement, but the chancellor declined to so find. In April 2002, the chancellor issued his opinion wherein he granted Marie a divorce on grounds of habitual cruel and inhuman treatment as well as desertion, plus granted Marie ownership of the marital home with Edward paying $1,200 per month in alimony to Marie for ten years. Marie subsequently filed a motion for amplification asking that the chancellor address issues he failed to address in his opinion, namely concerning who is responsible for the indebtedness on the marital home, Edward's failure to pay alimony, the chancellor's failure to divide certain marital assets including a retirement account valued at approximately $70,000, and various other points. In a supplemental opinion, the chancellor cited McLemore v. McLemore, 762 So.2d 316 (Miss.2000) and ordered Edward to quitclaim his interest in the marital home to Marie, but declined to find Edward in contempt for failure to comply with the temporary order. The chancellor also ordered Edward to pay $6,000 to Marie representing six months of unpaid alimony, and awarded fifty percent of Edward's retirement account to Marie. Concerning marital debt, the chancellor found that although Marie listed marital debt on her 8.05 financial statement she failed to provide supporting documentation, thereby alleviating any obligation on the chancellor to rule on this issue. The chancellor also denied Marie's request for a wage withholding order to collect alimony from Edward. Marie filed a motion for amplification and/or reconsideration asking that the chancellor order Edward to pay the indebtedness on the marital home, to maintain health insurance on her, and to require Edward to pay the marital indebtedness. The chancellor denied this motion and, in his final judgment, incorporated his previous orders.
¶ 3. Marie appeals to this Court alleging the following: (1) the court committed manifest error by not requiring Edward to pay the indebtedness on the marital home and other marital indebtedness; (2) the court erred by failing to consider and make findings on the applicable Ferguson factors with regard to the marital debt; (3) the court erred by not finding Edward in contempt for failure to make monthly alimony payments as required by the agreed temporary order and (4) the court erred by not ordering Edward to maintain insurance on Marie for as long as the law allows. The facts will be discussed in further detail in the discussion of each issue; however, having reviewed each issue, we find no merit and affirm.

DISCUSSION
I. DID THE COURT COMMIT MANIFEST ERROR BY NOT REQUIRING EDWARD TO PAY THE INDEBTEDNESS ON THE MARITAL HOME AND OTHER MARITAL INDEBTEDNESS?
¶ 4. Marie argues that Edward's failure to file the required financial statement rendered the statement she filed more persuasive, and the chancellor erred in failing to so find. In reviewing the decision of a chancellor in a domestic case, we will not reverse unless the chancellor was manifestly wrong, abused his discretion, or applied an erroneous legal standard. Reynolds v. Reynolds, 755 So.2d 467(¶ 5) (Miss.Ct.App.1999).
¶ 5. Marie claims that the chancellor erred in finding that insufficient credible evidence was presented to show the existence of joint indebtedness and the amount of such indebtedness. We look to McLemore v. McLemore, 762 So.2d 316 (Miss.2000), which both parties claim supports their positions.
¶ 6. In McLemore, both parties to the divorce action failed to introduce any evidence *789 concerning marital debts either in their financial statements or in their testimony. On appellate review, the supreme court stated:
Financial declarations introduced at trial could have been the subject of much cross examination and interpretation. [The appellant's] failure to introduce any evidence of "joint debt" at trial precludes this Court from considering whether the chancellor should have made a division based on such.
McLemore, 762 So.2d at 321 (¶ 16). Marie attempts to distinguish the present case from McLemore by showing that she included marital debts in her financial declaration, and the chancellor should have used this information in reaching his decision, especially since Edward failed to file his financial declaration. Edward rebuts that McLemore is persuasive since evidence introduced at trial alleged that some of Marie's post-separation debts were obtained by fraud.
¶ 7. We look to the evidence the chancellor had before him concerning marital debt and find such evidence to be sparse. Edward failed to provide any information concerning finances, including failing to submit the required financial declaration pursuant to Rule 8.05 of the Uniform Chancery Court Rules. On Marie's financial declaration she included a statement of liabilities listing the names of credit card companies, medical service persons and other businesses and listed a current balance for each creditor. No accompanying statements or bills were submitted for these liabilities, and the chancellor determined that some of the obligations were incurred subsequent to the couple's separation and were obtained by fraudulent means. After the trial at the chancellor's request, data concerning the payment history of two mortgages on the home was partially furnished in what the chancellor called a "very confusing" format. In our review of this information, we find the chancellor did not err in reaching the conclusion he did due to the lack of reliable information concerning the marital debts.
II. DID THE CHANCELLOR ERR BY FAILING TO CONSIDER AND MAKE FINDINGS ON THE APPLICABLE FERGUSON FACTORS WITH REGARD TO THE MARITAL DEBT?
¶ 8. In her second issue, Marie argues that the chancellor failed to address the Ferguson factors concerning division of marital debt. See Ferguson v. Ferguson, 639 So.2d 921, 928 (Miss.1994).
As with most matters appealed from the chancery court, this Court "employs a limited standard of review" of the division and distribution of property in divorces. Such division and distribution "will be upheld if it is supported by substantial credible evidence." This Court will not substitute its judgment for that of the chancellor "[e]ven if this Court disagree[s] with the lower court on the finding of fact and might ... [arrive] at a different conclusion." The chancellor's findings will not be disturbed "unless the Chancellor was manifestly wrong, clearly erroneous or an erroneous legal standard was applied."
Owen v. Owen, 798 So.2d 394(¶ 10) (Miss.2001) (citations omitted).
¶ 9. Marie argues that the chancellor failed to address all of the Ferguson factors in his opinion, thereby evidencing his failure to consider each factor. The chancellor stated in his opinion:
The [Ferguson] Court held that, "although this listing is not exclusive, this Court suggests the chancery courts consider the following guidelines where applicable, when attempting to effect an equitable division of marital property" .... The key factors to consider in *790 the case at bar are the length of the marriage, the economic contribution to the marriage by the parties, the present earning capacity of the parties, and the present physical disability of Mrs. Glass.
¶ 10. Marie argues that if the chancellor had considered other relevant Ferguson factors, namely the tax consequences and needs of the parties, he would have equitably ordered Edward to pay the mortgages on the marital home.
This Court has reversed decisions where, even though the chancellor may have actually applied the Ferguson factors, the chancellor failed to make specific findings on the record. At the same time, not every case requires consideration of all eight of the factors. This Court has stated that the chancellor "may consider only those factors he finds `applicable' to the property in question."
Owen, 798 So.2d at 399 (¶ 13) (citations omitted). In his opinion the chancellor noted that the key factors included the length of the marriage, the economic contribution to the marriage by the parties, the present earning capacity of the parties, and Marie's present physical disability. Through these words, the chancellor demonstrated that, while he was certainly aware of all of the Ferguson factors, he found these four to be pivotal. We find the chancellor did not commit error simply for failing to mention the other factors with regard to Marie and Edward's situation.
¶ 11. We also note that all property division, lump sum or periodic alimony payment, and mutual obligations for child support should be considered together when the chancellor makes an equitable division of assets. Burnham-Steptoe v. Steptoe, 755 So.2d 1225(¶ 25) (Miss.Ct.App.1999). The chancellor awarded Marie lump sum alimony to be paid over ten years at the rate of $1,200 per month, awarded Marie one-half of Edward's retirement fund the total of which was valued at approximately $70,000, and awarded Marie the marital home. Taking these awards into account, we find the chancellor did not err in his application of the Ferguson factors.
III. DID THE COURT ERR BY NOT FINDING EDWARD IN CONTEMPT FOR FAILURE TO MAKE MONTHLY ALIMONY PAYMENTS AS REQUIRED BY THE AGREED TEMPORARY ORDER?
¶ 12. In the agreed temporary order, both parties consented to Edward's paying Marie $1,000 per month in temporary alimony. Marie argued that Edward failed to pay this alimony from September 2001 through January 2002, and in his supplemental opinion the chancellor found that Edward was not in contempt with respect to the temporary order, but ordered Edward to pay $6,000 to Marie, which represented six months of unpaid alimony. Marie further argues on appeal that she was due attorney's fees as a result of Edward's failure to pay the alimony.
¶ 13. In Tillman v. Tillman, 809 So.2d 767 (Miss.Ct.App.2002), the chancellor failed to find the husband in contempt for failure to pay alimony, but did order him to pay past due alimony. Tillman, 809 So.2d at 769 (¶ 3). The chancellor denied the wife's request for attorney's fees citing the rule that attorney's fees are appropriate only where a party is financially unable to pay them. Id. at (¶ 10). The chancellor found that based on his award, the wife was able to pay her attorney. Id.
¶ 14. Utilizing the reasoning from Tillman, we find the chancellor did not err in failing to find Edward in contempt but then awarding past due alimony to Marie. The supreme court has affirmed the rule *791 that when the court denies a spouse's petition for contempt, no award of attorney's fees is warranted. Lahmann v. Hallmon, 722 So.2d 614(¶ 34) (Miss.1998). Regardless of the chancellor's reasoning, we find that his order for Edward to pay the delinquent alimony acted to cure any alleged contempt. Thus, we find no error in the chancellor's failure to award attorney's fees when the chancellor failed to find Edward in contempt.
IV. DID THE COURT ERR BY NOT ORDERING EDWARD TO MAINTAIN INSURANCE ON MARIE FOR AS LONG AS THE LAW ALLOWS?
¶ 15. Marie finally argues that the chancellor erred in not ruling on her request to require Edward to maintain insurance coverage on her. Marie argues that in her current health condition she will not be able to get health insurance on her own; thus, the chancellor should have required Edward to maintain insurance on her. Edward argues that Marie failed to provide the chancellor with any information sufficient to allow him to make such an award, and as an appellate court we may not reverse his finding of fact unless there is not substantial, credible evidence justifying his finding. Jones v. Lee, 754 So.2d 564 (¶ 6) (Miss.Ct.App.2000).
¶ 16. Marie testified that her main health insurance was through Edward's work, but she received disability checks from the Social Security Administration, which had found her completely disabled, plus she was eligible for Medicare. Marie told the court that she intended to apply for Medicaid, as well. After Marie's presentation of her health status and related financial situation, the chancellor noted the following:
Let me say something to the attorneys, and this may need a response from your witness. I am not sure how long, if the policy were to continue on the wife, there is a certain limit on that because of the divorce. There is a certain limit, I would assume that would apply, a year or so; and whether it is going to be convertible, I don't know. The drugs are the big thing, and if that is not covered by Medicare, which I am sure it is not, and then Medicade [sic] is uncertain; so I'm not too sure, with the limited information that I have, how that could be addressed; but anyhow, that is just an observation.
¶ 17. After the chancellor's acknowledgment that he had only been presented with limited information, Marie's attorney declined to further question her concerning her health status, nor did he present any documentation into evidence. On cross-examination, Edward's attorney did not question Marie about her health status. At the point the chancellor explained that he had not been presented with sufficient information on which to draw a conclusion on this subject, neither party further enlightened the chancellor concerning this situation. Marie cites authority on appeal which she did not present to the chancellor. However, we review the chancellor's findings based on the information he had before him and reverse only when there is not substantial, credible evidence justifying his finding. Jones, 754 So.2d at 566-67 (¶ 6). Based on the evidence presented to the chancellor, we cannot find he erred.
¶ 18. THE JUDGMENT OF THE NESHOBA COUNTY CHANCERY COURT IS AFFIRMED. COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
McMILLIN, C.J., KING AND SOUTHWICK, P.JJ., BRIDGES, THOMAS, IRVING, MYERS, CHANDLER AND GRIFFIS, JJ., CONCUR. BRIDGES, J., CONCURS *792 WITH A SEPARATE WRITTEN OPINION JOINED BY THOMAS, CHANDLER, AND GRIFFIS, JJ.
BRIDGES, J., Concurring:
¶ 19. I concur in whole with the opinion and conclusions of the majority. This concurring opinion is provided merely to suggest that the Mississippi Rules of Civil Procedure should be read and followed by all practicing attorneys in Mississippi, especially when applying terminology to pleadings.
¶ 20. In the record excerpts provided to this court I find where Marie filed "motions for contempt" and "motions for amplification and to reconsider." I also found where Edward filed a "counter complaint for divorce." Such motions and counter complaints either do not exist under the Mississippi Rules of Civil Procedure or are improper.
¶ 21. Mississippi Rule of Civil Procedure 81(f), Terminology of Statutes, provides in part:
In applying these rules to any proceeding to which they are applicable, the terminology of any statute which also applies shall, in inconsistent with these rules, be taken to mean the analogous device or procedure proper under these rules; thus (and these examples are intended in no way to limit the applicability of this general statement):

Bill of complaint, bill in equity, bill, or declaration shall mean a complaint as specified in these rules; ... Cross-bill shall be understood to refer to a counter claim, or a cross-claim, which ever is appropriate under these rules.
Having read this rule it should become apparent that Edward's counter complaint for divorce was a misnomer and should have been more appropriately titled, counter claim.
¶ 22. Rule 81(d)(2) of the Mississippi Rules of Civil Procedure provides for actions in contempt. In sub-part (3) of that rule it states that "complaints and petitions filed in [these] actions ... above shall not be taken as confessed." Initiating Rule 81(d) actions, such as the contempt action by Marie, by filing a "motion" is not proper procedure and judges should not take it as confessed. Rather Marie should have begun this proceeding with a properly served complaint or petition.
¶ 23. Further, I find no mention of a motion to reconsider in the Mississippi Rules of Civil Procedure. In rule 59 of the rules it provides for new trials wherein the court may, upon proper motion for new trial, "open the judgment if one has been entered, take additional testimony, amend findings of fact and conclusions of law or make new findings and conclusions, and direct the entry of a new judgment." Perhaps that was the intended aim of Marie's motion to reconsider; however, no such pleading should be accepted as proper under the Mississippi rules.
¶ 24. I find it discouraging that after twenty years in existence some good and well established attorneys continue to ignore these rules and that their attempts to comply are accepted by trial judges in their respective districts.
THOMAS, CHANDLER AND GRIFFIS, JJ., JOIN THIS SEPARATE OPINION.