872 So.2d 790 (2004)
Donna Michelle Smith PULLIAM, Appellant,
v.
Samuel Arthur SMITH, Appellee.
No. 2002-CA-02107-COA.
Court of Appeals of Mississippi.
May 11, 2004.
*792 Jennifer Sekul Harris, Jackson, attorney for appellant.
Rebecca C. Taylor, Wiggins, Pamela L. Nelson, attorneys for appellee.
EN BANC.
THOMAS, J., for the Court.
¶ 1. Donna Michelle Smith Pulliam and Samuel Arthur Smith were granted a divorce by the Stone County Chancery Court. Donna appeals, asserting three issues:
I. DID THE TRIAL COURT COMMIT MANIFEST ERROR BY FAILING TO FIND A MATERIAL AND SUBSTANTIAL CHANGE IN CIRCUMSTANCES WHICH DETRIMENTALLY EFFECTED THE CHILDREN PRIOR TO MAKING AN ALBRIGHT FACTORS EVALUATION?
II. DID THE TRIAL COURT ERR IN APPLYING THE ALBRIGHT FACTORS?
III. DID THE TRIAL COURT COMMIT MANIFEST ERROR IN FAILING TO MAKE ANY FINDINGS UNDER THE FERGUSON FACTORS WITH REGARD TO THE MARITAL DEBTS OF THE PARTIES?
Finding no error, we affirm.

FACTS
¶ 2. Samuel and Donna married in 1990, and two male children were born to the marriage, the oldest being born on June 19, 1993, and the youngest on December 18, 1997. Donna filed a complaint for divorce alleging habitual cruel and inhuman treatment, or in the alternative irreconcilable differences. Samuel counterclaimed alleging habitual cruel and inhuman treatment and adultery. Several temporary orders were issued regarding the issues of child custody and support, each of which granted Donna physical custody of both children, but alterations were made to visitation, and Dr. William Gasparini was ordered to conduct a custody evaluation. Settlement negotiations produced an agreed judgment granting a divorce on irreconcilable differences that was entered on December 13, 2001. The agreed judgment provided that Donna would have physical custody of the children for nine months of the year, during the school term, and Samuel would have physical custody during the summer. The parent without physical custody would have visitation on alternating weekends, and Samuel additionally would have visitation on Wednesday evenings during the school year. Samuel was to pay $400 per month in child support. The agreed judgment reserved issues of property settlement, retirement and alimony for trial.
¶ 3. Nine days after the entry of the agreed order, Donna married John Pulliam, who resided in Clarksville, Tennessee, which was 502 miles from the former marital home, and sought to remove the children from Mississippi. Donna had not previously disclosed her plans to relocate herself and the children to either Samuel or to the chancery court prior to the entry of the agreed order. Samuel filed for modification of child custody, seeking physical custody of the children and contempt. Donna counterclaimed for nonpayment of child support. On January 15, 2002, the chancery court entered a temporary order, which provided that Donna *793 would have temporary physical custody if she elected to remain in the Wiggins, Mississippi area, but that if she chose to move to Tennessee, Samuel would have temporary physical custody. The chancery court also ordered Donna to enroll the children in school in Mississippi and stated that it retained jurisdiction of the matter. Donna chose to move to Tennessee, and the children remained with Samuel in what was formerly the marital home.
¶ 4. After the entry of the temporary order, Chancellor Wes Teel resigned, and Chancellor James Persons was assigned the case. On September 27, 2002, the chancery court entered a judgment, granting Samuel physical custody, granting Donna visitation one weekend per month, every three day weekend and summer visitation for two months, with the parents alternating Thanksgiving and Christmas. The judgment provided that transportation costs be shared equally, and Donna have reasonable telephone visitation. Donna was ordered to pay $150 per month in child support. Additionally, the judgment said that Donna was entitled to half of Samuel's retirement account with the Public Employment Retirement System, and it divided the marital debt and estate in half, with each party taking an equal share.

ANALYSIS

STANDARD OF REVIEW
¶ 5. The standard of review employed by this Court in domestic relations cases is well settled. Chancellors are vested with broad discretion, and this Court will not disturb the chancellor's findings unless the court was manifestly wrong, the court abused its discretion, or the court applied an erroneous legal standard. Andrews v. Williams, 723 So.2d 1175, 1177(¶ 7) (Miss.Ct.App.1998) (citing Sandlin v. Sandlin, 699 So.2d 1198, 1203 (Miss. 1997)). However, we will not hesitate to reverse should we find that a chancery court was manifestly wrong, abused its discretion, or applied an erroneous legal standard. Glass v. Glass, 726 So.2d 1281, 1284 (¶ 11) (Miss.Ct.App.1998) (citing Bowers Window & Door Co., Inc. v. Dearman, 549 So.2d 1309 (Miss.1989)).

I. DID THE TRIAL COURT COMMIT MANIFEST ERROR BY FAILING TO FIND A MATERIAL AND SUBSTANTIAL CHANGE IN CIRCUMSTANCES WHICH DETRIMENTALLY EFFECTED THE CHILDREN PRIOR TO MAKING AN ALBRIGHT FACTORS EVALUATION?
¶ 6. The part of the judgment pertaining to this issue provided:
[W]ith regard to the child custody arrangements, the Court finds that at the time of the December 13, 2001, agreed judgment and for a period of at least thirty days or more prior to that time, Donna was dating John, had discussed marriage with John and a move to Tennessee with the minor children. These facts were concealed from Sam until after the December 13, 2001, judgment. The judgment granted primary custody to Donna with both parties having joint legal custody. Further, the visitation that Sam agreed to was impossible from the beginning, that is, weekly visitation every Wednesday and every other weekend. At the time Sam signed and agreed to the December 13, 2001 agreed judgment he did not know that his children would be taken 502 miles away and could not know of these things because they were concealed from him. Accordingly, this Court holds that the custody and visitation arrangements as set forth in the December 13, 2001 agreed judgment are void because of the concealment *794 and misrepresentation by Donna, which is tantamount to fraud.
The Court further holds that while Donna had the right to move to Tennessee, and that such a move ordinarily would not constitute a material change in circumstances. However, where Donna, at the time of the entry of the divorce, knew that she was to remarry within two or three weeks and move 502 miles away, and did not disclose her plans to Sam prior to the entry of the agreed judgment of divorce, that such does constitute a material change in circumstances. The custody and visitation arrangement clearly contemplated and Sam was reasonably led to believe that both parties would remain in the Wiggins area where the visitation and custody arrangements could be complied with and enjoyed by both parties.
The judgment found that alteration of the custody provisions of the previous agreed judgment was justified on two separate grounds: fraud on the court and a material change in circumstances.
¶ 7. A chancery court retains power to amend an agreed judgment in a domestic relations matter to conform to the true facts where one party conceals relevant facts from it and the other party. Askew v. Askew, 699 So.2d 515 (¶ 22) (Miss.1997); Manning v. Tanner, 594 So.2d 1164, 1167 (Miss.1992). However, the issue of fraud is generally raised via a M.R.C.P. 60(b) motion. Askew, 699 So.2d at (¶ 17). Appellate review of the decision to grant a M.R.C.P. 60(b) motion is abuse of discretion. Id. The party asserting the motion has the burden of proof of showing:
(1) a representation, (2) its falsity, (3) its materiality, (4) speaker's knowledge of its falsity or ignorance of its truth, (5) his intent that it should be acted on by the person and in the manner reasonably contemplated, (6) the hearer's ignorance of its falsity, (7) his reliance on its truth, (8) his right to rely thereon, and (9) his consequent and proximate injury.
Id. (citing Wright, Miller & Kane, Federal Practice and Procedure; Civil 2d § 2852 at 235 (1995)). See also Stringfellow v. Stringfellow, 451 So.2d 219, 221 (Miss.1984). In this case, rather than filing a M.R.C.P. 60(b) motion, Samuel sought modification of the custody order and a finding of contempt against Donna. Samuel's decision to proceed on a modification theory, rather than specifically pleading M.R.C.P. 60(b), was understandable as his primary concern was not to attack the agreed order itself, but to prevent Donna from moving the children, and making it impossible to comply with the visitation and custody provisions of the agreed order. Nevertheless, the result of proceeding under a modification of custody pleading was that the chancellor's resulting order did not state the specific findings of fact applicable to M.R.C.P. 60(b) motions, even though it appears from the record in this case that these findings could be supported by evidence.
¶ 8. However, we find it unnecessary to reach the issue of whether the factual findings that the chancellor did make are sufficient to uphold setting aside the agreed order on the basis of fraud, because the chancellor's finding of a material change in circumstances is well supported by the record. "A decree granting child custody is not to be modified so as to change custody from one parent to another unless there has been a material change in circumstances which adversely affects the child's welfare occurring since the original decree." Kavanaugh v. Carraway, 435 So.2d 697, 699 (Miss.1983); Mixon v. Sharp, 853 So.2d 834(¶ 8) (Miss.Ct.App. 2003). In the present case, the chancellor found that Donna's move 502 miles away from the former marital residence constituted a material change that adversely affected the two children. First, the move would effectively make it impossible to carry *795 out the visitation provisions of the agreed judgment. Therefore, as a matter of practical fact, the custody agreement had to be modified. Secondly, the chancellor found as a matter of fact that Donna had committed a fraud not only towards Samuel, but also the chancery court, in falsely asserting she intended to perform under the terms of the agreed judgment. The chancellor found that Donna's moral fitness to raise the children was implicated by her decision to state false facts to the chancery court concerning her intentions towards not only the children's father, but also to change the school which they had attended their entire lives, in a district in which Samuel is a teacher and a coach. Findings of fact are not easily set aside. See, e.g., Andrews, 723 So.2d at (¶ 7). The determination to alter the physical custody of the children during the school year was made to prevent the children being moved from their accustomed community during a time of natural emotional stress, and being taken out of state by a parent who, after the entry of the agreed judgment setting custody, had given reason to question her moral fitness. The chancellor did not abuse his discretion in finding a material change of circumstances requiring a change in custody.

II. DID THE TRIAL COURT ERR IN APPLYING THE ALBRIGHT FACTORS?
¶ 9. The chancellor made specific findings of fact for each of the factors set forth in Albright v. Albright, 437 So.2d 1003, 1005 (Miss.1983). Donna contends the findings were against the overwhelming weight of the evidence. Donna contends that the chancellor erred in finding that the health of the children favored neither parent, because Samuel was not present until the last moment before one of the children had surgery for an eye condition, and was not familiar with the medications for that condition; however, the record shows that Samuel was present at all surgeries and had been administering medications from January through September of 2002. Donna contends that the chancellor erred in finding that the continuity of care favored neither parent; however, the record shows that Donna was the primary caregiver until the entry of the temporary order in January of 2002, and Samuel had been the primary caregiver thereafter.
¶ 10. Donna contends that the chancellor erred in finding that parenting skills favored neither party, because Donna is not employed full time and could be "a stay at home mom;" however, the record shows that during the summer vacation, the children will reside with Donna, and Samuel not only evidenced adequate after school care for the children, but also is a teacher in the same school district that the children would attend, and his job does not require overnight travel.
¶ 11. Donna contends that the chancellor erred in finding that the mental health of the parents favored Samuel, because the chancellor "emphasized" one sentence from Dr. Gasparini's evaluation that stated Donna was "more unstable;" however, given Donna's actions in misleading the chancery court as to her intentions not to abide by its custody order, the record supports the chancellor's finding. Donna contends that the chancellor erred in finding that the emotional ties of the parent and the children favored neither party, because Samuel did not visit the children in Tennessee, during a period of time in which Donna had the children for visitation after her re-marriage; however, the record shows that Samuel was teaching in a summer program during this time period.
¶ 12. Donna contends that the chancellor erred in finding that the moral fitness of the parents favored Samuel; however, the record shows that the chancellor based this finding on the fact that she concealed *796 her relationship with her present husband from the chancery court. Donna contends that the chancellor erred in finding that the home and school community "slightly" favored Samuel, because Samuel did not have a lease on the house he was renting; however, the house in question had been the marital residence during the marriage.
¶ 13. Donna contends that the chancellor erred in finding that neither child was old enough to express a preference with regard to which parent they wished to live with; however, neither child had attained the age of twelve. Donna contends that the chancellor erred in finding that stability of home and employment slightly favored Samuel; however, the record shows that Donna had recently remarried upon little consideration, and Samuel had stable employment in the community.
¶ 14. When a chancellor has applied the correct legal standard to a custody determination, this Court will not disturb the factual findings that are supported by substantial evidence. Creel v. Cornacchione, 831 So.2d 1179 (¶ 13) (Miss. Ct.App.2002). In this case, the chancellor's findings were well supported. There is no merit to this assignment of error.

III. DID THE TRIAL COURT COMMIT MANIFEST ERROR IN FAILING TO MAKE ANY FINDINGS UNDER THE FERGUSON FACTORS WITH REGARD TO THE MARITAL DEBTS OF THE PARTIES?
¶ 15. A failure to explicitly recite each and every Ferguson guideline does not mandate reversing a chancellor's judgment. Glass v. Glass, 857 So.2d 786 (¶ 10) (Miss.Ct.App.2003). However, a chancellor's findings must be specific enough to allow this Court to find that the factors were considered, and the chancellor determined what he considered to be the "key" factors. Id. In the present case, when ordering that the marital debt be divided equally, the chancellor made specific findings that, while not explicitly referencing the Ferguson decision, did elucidate his analysis of each relevant factor. Ferguson v. Ferguson, 639 So.2d 921, 928 (Miss.1994).[1] The chancellor considered each parties' economic and domestic contributions, the disposal of marital assets by each party, the market value of marital assets, the value of nonmarital property, the income and earning capacity of each party, and the non-marital assets of each party. There is no showing that the division of debt had any tax considerations, nor was alimony an issue. Moreover, the majority of the marital debt consisted of college loans taken out to finance Donna's training as a teacher, and the practical effect of the chancellor's decision is that Samuel will continue to be responsible for that debt, though the chancellor also found that the loan proceeds had been used for general household expenses as well as education. The record shows that the chancellor considered the marital debt with regard to the Ferguson guidelines. The chancellor did not err in dividing the marital debt equally. There is no merit to this assignment of error.
*797 ¶ 16. THE JUDGMENT OF THE STONE COUNTY CHANCERY COURT IS AFFIRMED. THE APPELLANT IS ASSESSED ALL COSTS OF THIS APPEAL.
KING, C.J., BRIDGES AND SOUTHWICK, P.JJ., LEE, IRVING, MYERS, CHANDLER AND GRIFFIS, JJ., CONCUR.
NOTES
[1] These guidelines include:

(1) economic and domestic contributions by each party to the marriage,
(2) expenditures and disposal of the marital assets by each party,
(3) the market value and emotional value of the marital assets,
(4) the value of the nonmarital property,
(5) tax, economic, contractual, and legal consequences of the distribution,
(6) elimination of alimony and other future frictional contact between the parties,
(7) the income and earning capacity of each party, and
(8) any other relevant factor that should be considered in making an equitable distribution.