BARNES, J.,
for the Court:
¶ 1. Paul William Parra and Bridget Marie Parra were divorced in 2009, and the Warren County Chancery Court awarded Paul the “permanent care, custody and control” of the couple’s three minor children. Bridget filed a motion for a rehearing, contending that she should have been awarded custody since Paul had not informed the chancellor that he was planning to move their children to California. The chancery court denied Bridget’s motion, and she now appeals. Finding that the chancery court failed to submit any specific findings of fact under Albright v. Albright, 437 So.2d 1003 (Miss.1983), in awarding custody to Paul, we reverse and remand for further proceedings in accordance with this opinion.
SUMMARY OF FACTS AND PROCEDURAL HISTORY
¶ 2. Bridget and Paul were married on October 4, 1999. The couple had three children born of the marriage. Two of the children were born in California, but the youngest child was born after the couple moved to Vicksburg, Mississippi, a few years ago. In 2008, Bridget began having an affair with Tommy Breland Jr. When Paul learned of Bridget’s adultery, the Parras separated in December 2008. The couple’s minor children remained with Paul during the separation, while Bridget went to live with Tommy in Sicily Island, Louisiana. Although Bridget initially had regular visits with the children, the children alleged that Tommy was physically abusive; so subsequently, Paul only allowed visitation with Bridget at her mother’s home in Yazoo City, Mississippi.
¶ 3. On January 5, 2009, Paul filed a complaint for divorce on the grounds of habitual cruel and inhuman treatment, adultery, and irreconcilable differences. He also requested physical custody of the children. A hearing on temporary custody was held on January 15, 2009, and Paul was awarded custody, with Bridget having visitation rights. It was also noted in the temporary order that the children were not to have contact with two men, who were Bridget’s cousins and neighbors of Paul, as the chancellor determined that their presence would not be “conducive to the best interest[s] and welfare of such minor children[.]” This was based upon testimony, which alleged that both men may have been previously accused or charged as pedophiles. However, all fault grounds were later withdrawn, and the parties entered into a consent to divorce, which awarded Paul the marital domicile, a 16 x 80 mobile home located in Vicksburg.
¶ 4. A hearing was held on October 15, 2009, to determine the marital distribution of assets, child custody and visitation, and child support. The chancery court granted the Parras a divorce and awarded Paul permanent custody of the couple’s minor children. Bridget was granted reasonable and liberal rights of visitation. Bridget filed a motion for rehearing on October 27, 2009, stating that she should have been awarded custody because Paul failed to reveal to the court that he was planning to move the children to California. On November 2, 2009, Paul replied to Bridget’s motion for rehearing, denying Bridget’s claims that he was moving. Yet, nine days later, on November 11, 2009, Paul and the children moved to California, where Paul’s mother lives.
¶ 5. A hearing on Bridget’s motion was held on January 20, 2010, and Bridget testified that since Paul had left with the children, she had been unable to exercise her visitation rights. Bridget also informed the chancellor that she had recently bought' a five-bedroom home in Vicksburg and that Tommy was living with her. *875 Paul failed to appear at the hearing. The chancery court denied Bridget’s motion, and Bridget timely appeals. Finding that the chancery court failed to provide specific findings for its award of child custody to Paul, we reverse and remand for further proceedings in accordance with this opinion.
STANDARD OF REVIEW
¶ 6. This Court will only reverse a chancellor’s ruling in a child-custody case if the decision is “manifestly wrong, clearly erroneous, or applies] an erroneous legal standard.” Minter v. Minter, 29 So.3d 840, 846 (¶ 25) (Miss.Ct.App.2009) (citing Johnson v. Gray, 859 So.2d 1006, 1012 (¶ 31) (Miss.2003)). If the chancellor’s findings of fact are supported by “substantial, credible evidence,” then they will not be disturbed on appeal. Id.
I. Whether the chancery court committed error by failing to make findings of fact under Albright regarding the award of custody.
¶ 7. Bridget argues that, in awarding custody of the children to Paul, the chancery court failed to address the factors set forth in Albright and failed to submit any reasons why the custodial arrangement would be in the best interests of the children. In Albright, the Mississippi Supreme Court outlined several factors for the court to consider when awarding custody, recognizing that “the polestar consideration is the best interest and welfare of the child.” Phillips v. Phillips, 45 So.3d 684, 693 (¶ 25) (Miss.Ct.App.2010) (citing Albright, 437 So.2d at 1005). These factors are:
(1) the age, health, and sex of the child; (2) a determination of the parent who had the continuity of care prior to the separation; (3) which parent has the best parenting skills and which has the willingness and capacity to provide primary childcare; (4) the employment of the parent and the responsibilities of that employment; (5) the physical and mental health and age of the parents; (6) the emotional ties of parent and child; (7) moral fitness of the parents; (8) the home, school, and community record of the child; (9) the preference of the child at the age sufficient to express a preference by law; (10) the stability of the home environment; and (11) other factors relevant to the parent-child relationship.
Id. Bridget claims that the chancellor’s failure to address these factors and make any findings of fact warrants reversal of the judgment.
¶ 8. Paul contends that since Bridget failed to make a motion or request for such findings under Uniform Chancery Court Rule 4.01 and Mississippi Rule of Civil Procedure 52(a), she waived her right to appeal this issue. Rule 4.01 advises:
In all actions where it is required or requested, pursuant to M.R.C.P. 52, the Chancellor shall find the facts specially and state separately his conclusions of law thereon. The request must be made either in writing, filed among the papers in the action, or dictated to the Court Reporter for record and called to the attention of the Chancellor.
UCCR 4.01 (emphasis added). Rule 52(a) states that: “In all actions tried upon the facts without a jury the court may, and shall upon the request of any party to the suit or when required by these rules, find the facts specially and state separately its conclusions of law thereon and judgment shall be entered accordingly.” M.R.C.P. 52 (emphasis added).
¶ 9. However, in Bodne v. King, 835 So.2d 52, 57 (¶ 13) (Miss.2003), the supreme court observed that it is when “findings are not mandated by the nature of the *876 case, procedural rules are applied to determine whether findings should be made.” (Citing Lowery v. Lowery, 657 So.2d 817, 818-19 (Miss.1995)) (emphasis added). The supreme court noted that, for example, a case dealing the division of marital assets is one such area “where specific findings are mandated.” Id.
¶ 10. Similarly, the supreme court has determined that cases involving a determination of child custody also require specific findings. In Hayes v. Rounds, 658 So.2d 863, 866 (Miss.1995), the supreme court reversed a chancery court’s award of custody and remanded, stating that although the chancellor’s conclusions may have evi-dentiary support, “in the absence of specific findings we cannot affirm with confidence that the best result has been reached.” Further, in Powell v. Ayars, 792 So.2d 240, 244 (¶ 10) (Miss.2001), the supreme court held: “Our job as a reviewing [c]ourt is only to evaluate whether the chancellor’s decision was manifestly erroneous based on a proper analysis of each of the applicable Albright factors. This task becomes futile when chancellors fail to consider and discuss each factor when rendering decisions.” In Powell, the chancellor actually discussed two of the Al-bright factors, but the supreme court did not find this sufficient and reversed and remanded for further findings. Powell, 792 So.2d at 244-45 (¶ 11). This Court has complied with this rule, holding that “[i]t is reversible error if the chancellor does not articulate the reasoning behind the finding for each Albright factor.” Norman v. Norman, 962 So.2d 718, 720 (¶ 6) (Miss.Ct. App.2007) (citing Davidson v. Coit, 899 So.2d 904, 911 (¶ 18) (Miss.Ct.App.2005)).
¶ 11. Here, the chancery court merely stated in its judgment:
That Paul William Parra is hereby awarded the permanent care, custody and control of Taylor Nicole Parra, Paul William Parra, III and Landon Joseph Parra subject to the visitation rights of the Bridget Marie Parra. That Bridget Marie Parra is hereby awarded reasonable rights of visitation with the minor children of the parties to include but not be limited to the Court’s standard visitation schedule which is attached hereto and made a part hereof as if copied in full herein.
Although the parties discussed the Al-bright factors during the testimony at the hearing, the chancellor made no reference in her judgment as to what was in the best interests of the children and did not give this Court any indication of what Albright factors were considered in making the custody determination. This omission is all the more important as several of the factors that might have been in Paul’s favor, such as the children’s happiness with their home life and school, were altered within a month of the court’s ruling.
¶ 12. Accordingly, we find no merit to Paul’s claim that Bridget was required to submit a procedural motion or request for findings. By the nature of the case, specific findings were mandated, and procedural rules not applicable. Therefore, we find that the chancellor’s failure to make any findings under Albright in the present case constituted error. We reverse the judgment of the chancery court and remand for further proceedings in accordance with this opinion.
II. Whether Paul’s failure to notify the chancery court of his intention to move with the children to California constituted fraud.
¶ 13. At the January 20, 2010 hearing, Bridget asserted that her motion for rehearing should be considered a Rule 60(b) motion, as Paul perpetrated a fraud upon the court by representing that he needed the marital home in Vicksburg for raising *877 the children when he knew that he would soon be moving to California. See M.R.C.P. 60(b). At the hearing for temporary custody on January 14, 2009, Paul told the chancery court that he wanted his children “living on 211 Whatley Road,” which was the couple’s marital home in Vicksburg. Later, at the hearing to determine permanent custody held on October, 15, 2009, Paul made no mention of moving to California with the children. In fact, he testified that his children liked their school and community. At the hearing, Paul was asked the following:
Q. And do they have a home school community record. Do they like the community they live in?
A. Yes.
Q. Do they have friends in that community?
A. Yes.
Q. And they play and go out with their friends?
A. Yes.
Q. And they have relatives that live in the area?
A. Yes, sir.
Q. And all that is conducive to your children’s environment that they live in for their best interest?
A. Yeah. Oh yeah, they like it.
Paul also stated that his sister was residing with him to help with the children and that she was seeking employment in Mississippi and that he intended for this to continue.
¶ 14. This testimony by Paul suggests that he might have misrepresented his intentions to the chancery court. We find it unlikely that a father would decide to quit his job and uproot his three children from their home, community, and school in a mere three weeks, without some advance planning or thought. Additionally, in his response to Bridget’s motion for rehearing filed on November 2, 2009, he denied that he was planning on moving the children to California. However, nine days later, he and the children were gone.
¶ 15. In Trim v. Trim, 38 So.3d 471, 477 (¶ 15) (Miss.2010), the supreme court noted:
Rule 60(b) provides that the rule does not limit the court’s power to “to set aside a judgment for fraud upon the court.” Miss. R. Civ. P. 60(b). “Relief based on ‘fraud upon the court’ is reserved for only the most egregious misconduct, and requires a showing of ‘an unconscionable plan or scheme which is designed to improperly influence the court in its decision.’ ” Wilson v. Johns-Manville Sales Corp., 873 F.2d 869, 872 (5th Cir.1989) (quoting Rozier v. Ford Motor Co., 573 F.2d 1332, 1338 (5th Cir.1978)). Fraud on the court “should ‘embrace only the species of fraud which does or attempts to, defile the court itself, or is a fraud perpetrated by officers of the court so that the judicial machinery cannot perform in the usual manner its impartial task of adjudging cases that are presented for adjudication.’ ” Id. (quoting Kerwit Med. Prods., Inc. v. N & H Instruments, Inc., 616 F.2d 833, 836 n. 8 (5th Cir.1980)). “Fraud vitiates a judgment caused by the active agency of some party to the proceeding, as the court is misled and deceived as to the facts upon which it attempts to administer the law, and mistake is equally efficacious in procuring a wrong.” Brown v. Wesson, 114 Miss. 216, 74 So. 831, 834 (1917).
“The mere non[-]disclosure to an adverse party and to the court of facts pertinent to a controversy before the court does not add up to ‘fraud upon the court’ for purposes of vacating a judgment under Rule 60(b).” Id. at 477-78 (¶ 16) (quoting Kerwit Med. Prods., 616 F.2d at 837).
*878 ¶ 16. “To warrant relief pursuant to Rule 60(b)(1), the movant must prove fraud, misrepresentation or other misconduct by clear and convincing evidence.” Hill v. Hill, 942 So.2d 207, 214 (¶ 27) (Miss.Ct.App.2006). In Seghini v. Seghini, 42 So.3d 635, 642 (¶ 25) (Miss.Ct.App. 2010) (internal citations and quotations omitted), this Court held:
Appellate review of a trial court’s ruling upon a Rule 60(b)(1) is limited to abuse of discretion. Among the findings necessary to support granting relief is that, a trial court must find both that a witness intended to misrepresent some fact in order to influence the decision by the finder of fact, and that the finder of fact did rely upon the misrepresentation in its decision.
(Emphasis added).
 ¶ 17. While, this set of circumstances certainly creates an assumption Paul was not forthcoming about his situation to the chancery court, Bridget must prove Paul committed a fraud upon the court by “clear and convincing evidence.” Clear and convincing evidence “produces in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established, evidence so clear, direct and weighty and convincing as to enable the fact-finder to come to a clear conviction, without hesitancy, of the truth of the precise facts of the case.” Niebanck v. Block, 35 So.3d 1260, 1264 (¶ 10) (Miss. Ct.App.2010) (quoting Moran v. Fairley, 919 So.2d 969, 975 (¶24) (Miss.Ct.App. 2005)). Paul did not testify at the rehearing, so we do not know what circumstances existed to precipitate the move. Further, as we have already observed, the chancery court did not tell us what it relied upon in its award of custody to Paul. Thus, we do not know if this set of circumstances would have made a difference in the chancellor’s decision. Bridget claims that she heard rumors about Paul moving with the children immediately after the entry of judgment and that Paul called her on his way to California, stating that she would not see her children again. However, we cannot say that this is clear and convincing evidence Paul planned to move when he testified at the original hearing.
¶ 18. Further, Paul’s moving his children to California may not be a ground for a change in custody. It cannot be said, as Bridget claims, that this change “negates” Paul’s testimony that he has a job, can afford to maintain a home, and afford to take care of his children. Moving the children to California to live with him and their grandmother does not necessarily mean that their “home environment was shattered]!]” In Cheek v. Ricker, 431 So.2d 1139, 1144 (Miss.1983), a child-custody modification case, the supreme court held:
One change of a transitory nature has occurred. At the time of the 1978 decree, Pamela was living in Starkville with her son, Chase. In February of 1980[,] Pamela and Chase moved to Houston, Texas. No doubt this created a certain strain on Hollis’s visitation privileges and on Chase’s access to his father’s love. Yet in this day and time many persons must change their residence, sometimes even cross-country, in order to obtain suitable employment, and for other bona fide reasons. Surely, it must be the law that such a change of residence by the person having custody is not a material change in circumstances which would justify a reconsideration of an order for primary custody.
¶ 19. On the other hand, in Pulliam v. Smith, 872 So.2d 790, 794 (¶8) (Miss.Ct. App.2007), this Court affii'med a chancellor’s holding that Donna Pulliam’s decision to move her children “502 miles away from the former marital residence constituted a *879 material change that adversely affected the two children.” In Pulliam, the agreed custody order granted Donna physical custody of the couple’s two children for the nine months of the school term, and it granted the father, Samuel Smith, physical custody during the summer. However, nine days after the entry of the judgment, Donna remarried and sought to move the children to her new home in another state. These plans were not disclosed to the chancery court prior to the entry of the judgment. Id. at 792 (¶ 3). The chancellor found this omission by Donna to be a fraud upon the court and that it raised an issue of her moral fitness. Id. at 795(¶ 8).
¶ 20. While there may not be any merit to Bridget’s assertion that she should be awarded legal and physical custody, the supreme court has stated that “Mississippi law favors maintaining relationships between parents and - their children even though the parent may be non-custodial.” Rogers v. Morin, 791 So.2d 815, 820 (¶ 9) (Miss.2001). Here, the chancery court’s judgment stated that “neither the custodial or non-custodial parent shall do anything that may estrange the child from the other party ... or which may hamper the free and natural development of the child’s love and respect for the other party, being the intention of the parties to encourage and assist in developing a healthy relationship between the child and each parent.” Paul’s moving the children to California has prevented any visitation by Bridget, due to distance and monetary limitations. While Paul’s seemingly deceitful behavior may not be a ground for removing the children from his primary physical custody, it certainly should be a factor that the chancellor addresses on remand in her review of the Albright factors.
¶ 21. THE JUDGMENT OF THE CHANCERY COURT OF WARREN COUNTY IS REVERSED, AND THIS CASE IS REMANDED FOR FURTHER PROCEEDINGS CONSISTENT WITH THIS OPINION. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE AP-PELLEE.
LEE, C.J., IRVING AND GRIFFIS, P.JJ., MYERS, ISHEE, ROBERTS, CARLTON AND MAXWELL, JJ., CONCUR. RUSSELL, J., NOT PARTICIPATING.