# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2021-CA-00068-COA

**DERVIN JERMAINE POLK**                                               **APPELLANT**

**v.**

**EBONY LEE WILLIAMS POLK**                                              **APPELLEE**

DATE OF JUDGMENT:          12/21/2020
TRIAL JUDGE:               HON. RHEA H. SHELDON
COURT FROM WHICH APPEALED: FORREST COUNTY CHANCERY COURT
ATTORNEY FOR APPELLANT:    MICHAEL ADELMAN
ATTORNEY FOR APPELLEE:     SHAKITA LANETTE TAYLOR
NATURE OF THE CASE:        CIVIL - DOMESTIC RELATIONS
DISPOSITION:               AFFIRMED - 11/23/2021
MOTION FOR REHEARING FILED:
MANDATE ISSUED:

### BEFORE CARLTON, P.J., LAWRENCE AND SMITH, JJ.

### LAWRENCE, J., FOR THE COURT:

¶1.    Dervin Polk appeals from the Forrest County Chancery Court's judgment of divorce awarding his ex-wife Ebony Polk sole physical custody of their son, A.P.[1]  Dervin's argument on appeal is two-fold: he argues (1) that the chancellor abused her discretion in her *Albright*[2] analysis; and (2) that the chancellor's terms regarding weekend visitation were "unduly harsh and punitive."  After review, we find substantial evidence in the record to support the chancellor's decision. Accordingly, we affirm.

### FACTS

---

[1] Initials are used to protect the identity of the minor child.

[2] *Albright v. Albright*, 437 So. 2d 1003 (Miss. 1983).

¶2.     Dervin and Ebony married on May 30, 2014, in Dallas, Georgia. They had one child together, A.P., born in 2015. The couple separated on or about January 10, 2019, when Ebony left the marital home and moved to South Carolina. In February 2019, Dervin and A.P. moved from the marital home to Hattiesburg, Mississippi. Dervin filed for divorce on October 18, 2019, and requested sole legal and physical custody of A.P. On November 4, 2019, Ebony was personally served in South Carolina with a copy of the complaint for divorce and a Rule 81 summons, M.R.C.P. 81; the summons informed her that a hearing was scheduled for December 9, 2019, regarding Dervin's complaint for divorce and request for custody.

¶3.     On the day of the hearing, Ebony failed to appear in court. As a result, the chancery court granted Dervin temporary legal and physical custody of A.P. and awarded Ebony temporary visitation. On March 6, 2020, Ebony filed an answer and counterclaim for divorce and requested sole physical custody of A.P. The trial was originally scheduled for May 5, 2020, but was later continued to August 13, 2020.

¶4.     On the day of trial, the parties entered into a voluntary consent to divorce on the ground of irreconcilable differences and a voluntary consent to permit the court to decide the following issues: (1) legal and physical custody of A.P.; (2) visitation; (3) child support; and (4) medical insurance for A.P. The parties also entered into a partial settlement agreement on the division of marital property and marital debts. As a result, the chancery court issued a supplemental order granting Dervin temporary physical custody and Ebony temporary visitation and rescheduled the remaining issues for trial to begin on November 20, 2020.

¶5.    At trial, Dervin stated that on January 10, 2019—the date of separation—he was working at a hospital in Marietta, Georgia, as a valet. At around 2:35 p.m. that day, Ebony called him and said he "needed to hurry up and get home" because she was leaving him, and their three-year-old son would be left alone. When Dervin arrived, he saw A.P. standing on the porch crying. Ebony was in the house packing her bags while her friend waited outside. According to Dervin, Ebony said she was moving back to South Carolina. Ebony left that day and did not return. Less than a month later, Dervin was evicted from the marital home, and he and A.P. moved to Hattiesburg to live with Dervin's father and stepmother.[3] He testified that he paid his father $300 for rent each month.

¶6.    Dervin testified at trial that he worked at Kohlar Engines as a laborer but that the job was "seasonal," meaning his employment could end at any time. His Rule 8.05 financial statement listed his gross monthly income as $2,979.16. *See* UCCR 8.05. Dervin's weekly work hours were from 3:30 p.m. to 1 a.m.; he sometimes worked the same shift on weekends. Dervin testified that during the week, A.P. went to preschool three days a week from 8 a.m. until 2 p.m., when Dervin's father would pick him up and take him home. On the other days of the week, A.P. participated in virtual learning at Pearl River Valley Opportunity Head Start.

¶7.    Dervin testified that he had a good relationship with A.P. and that he was involved in A.P.'s life from the beginning. For example, Dervin bathed A.P. and changed his diapers

---

[3] At trial, Dervin referred to Bertha Smith as his stepmother and stated that she and his father were "married" through "common law." Dervin's father Ervin Polk testified at trial that he and Bertha had been dating since 2003.

and his clothes. He further stated that A.P. was in a "loving" home with Dervin's father and stepmother. Dervin testified that before Ebony left, they equally participated in caring for A.P. He explained that he and Ebony took turns caring for A.P. during the day, depending on their work schedules. When they both had to work, a woman came to their house to take care of A.P.

¶8. Dervin also testified that he had other children before he married Ebony and that two of his daughters, ages 25 and 14, lived in Hattiesburg and that he stayed in "contact" with those daughters. However, he later admitted on cross-examination that from the time he married Ebony in 2014 to when he moved back to Hattiesburg in 2019, Dervin did not see either daughter. He stated that after he and A.P. moved to Hattiesburg, A.P. spent time with both siblings. Sometimes, A.P. would stay with Dervin's twenty-five-year-old daughter because she had a son close to A.P.'s age.

¶9. Ebony testified that she had two other children, ages 12 and 14, from a previous relationship. Those children had lived with her and Dervin before the separation. Ebony also testified that she left the marital home on January 10, 2019, because she and Dervin had some "complications," and she needed to leave "to give [them] some space." She stated that she told Dervin about her move to South Carolina a couple of days before she left and asked if she could take A.P. with her. He said no, and she left with her other two children, whose father lived in South Carolina. Ebony testified that she wanted to take A.P. with her, but she "was informed by the local government . . . that I was not allowed to take him out of state if the other parent was in the green, and I would . . . receive kidnaping charges." When

4

questioned further by the court, Ebony testified that she always intended to come back to Georgia after a few weeks and that her main reason for going to South Carolina was so that her other two children could live with their father.

¶10. Ebony stated that after she left, she tried calling A.P. every day or every other day. According to Ebony, Dervin ceased communication when he and A.P. moved to Hattiesburg. Ebony did not know they had moved until the landlord of the marital home notified her to come collect the rest of her belongings. Ebony testified that she tried to call A.P. and see him in person but that there were many times when Dervin made it difficult for that to happen.

¶11. Before she gave birth to A.P., Ebony was employed as a certified nursing assistant. She testified that she took maternity leave long enough to heal from her caesarean section and then returned to work. She testified that she and Dervin shared the household and parenting responsibilities and that they were both home during the afternoon hours.

¶12. At the time of trial, Ebony was still living in South Carolina and working as a certified nursing assistant. Her Rule 8.05 financial statement listed her gross monthly income as $2,024.96. Ebony testified that she regularly worked from 8 a.m. to 3 p.m. during the week. On days when she had to work the night shift, her godmother kept her older son and daughter. Ebony also testified that she rented a home, which had three bedrooms and two bathrooms. Ebony stated that if she were granted custody of A.P., her older son and A.P. would share a room with bunk beds. Finally, she stated that she and A.P. had a "very close connection" and that she wanted A.P. to live with her.

¶13. On December 21, 2020, the chancellor entered a judgment of divorce on the ground

5

of irreconcilable differences. Regarding custody, the chancellor discussed the *Albright* factors to determine the best interest of the child. The chancellor found the factors of emotional ties of the child and parent and stability of the home and employment favored Ebony. The chancellor found the factors of continuity of care prior to separation and the home, school, and community record of the child favored Dervin. The chancellor found that the remaining applicable factors were neutral.[4] Ultimately, the chancellor awarded Ebony physical custody of A.P. and ordered Ebony and Dervin to share legal custody. As for visitation, the court divided holidays between Ebony and Dervin and ordered them to rotate two weeks of custody at a time until August 1, 2021, at which point Ebony would have sole physical custody.[5] Finally, the court ordered Dervin to pay Ebony $325 per month in child support beginning August 1, 2021, and awarded Dervin visitation. From that judgment, Dervin appealed.

## STANDARD OF REVIEW

¶14. The standard of review for child-custody rulings is limited. We will not reverse unless the trial court made findings that are manifestly wrong or clearly erroneous or applied an

---

[4] In the chancellor's bench ruling and written order, she did not articulate two factors in her *Albright* analysis: (1) the employment of the parent and responsibilities of that employment; and (2) the physical and mental health and age of the parents. However, Dervin does not raise this omission as an issue on appeal. It is important to note that the chancellor heard testimony and discussed both of the parties' employment in her *Albright* analysis. In addition, the testimony showed that at the time of trial, Dervin was forty-five years old, Ebony was thirty-four years old, and both parties were in good physical and mental health. These facts will be more fully discussed in paragraphs 25 through 30.

[5] The court also ordered Dervin to pay Ebony $100 in child support from January 1, 2021, to July 1, 2021.

improper legal standard. *Smith v. Smith*, 97 So. 3d 43, 46 (¶7) (Miss. 2012). "So long as there is substantial evidence in the record that, if found credible by the chancellor, would provide support for the chancellor's decision, this Court may not intercede simply to substitute our collective opinion for that of the chancellor." *Hammers v. Hammers*, 890 So. 2d 944, 950 (¶14) (Miss. Ct. App. 2004) (quoting *Bower v. Bower*, 758 So. 2d 405, 412 (¶33) (Miss. 2000)). Finally, "our polestar consideration," like the chancellor's, "must be the best interest of the child." *Montgomery v. Montgomery*, 20 So. 3d 39, 42 (¶9) (Miss. Ct. App. 2009) (quoting *Hensarling v. Hensarling*, 824 So. 2d 583, 587 (¶8) (Miss. 2002)).

## ANALYSIS

### 1. *Albright* Analysis

¶15. Dervin first argues that the chancellor erred in her *Albright* analysis. The *Albright* factors are as follows: (1) age, health, and sex of the child; (2) "continuity of care prior to the separation"; (3) parenting skills and "the willingness and capacity to provide primary child care"; (4) "the employment of the parent and responsibilities of that employment"; (5) the "physical and mental health and age of the parents"; (6) the "emotional ties of parent and child"; (7) the "moral fitness of the parents"; (8) "the home, school, and community record of the child"; (9) "the preference of the child at the age sufficient to express a preference by law"; (10) "the stability of the home environment and employment of each parent"; and (11) "other factors relevant to the parent-child relationship." *Albright*, 437 So. 2d at 1005.

¶16. An *Albright* analysis is not a "mathematical formula." *Lee v. Lee*, 798 So. 2d 1284, 1288 (¶15) (Miss. 2001). Further, the factors are not meant to be weighed equally in every

7

case. *Divers v. Divers*, 856 So. 2d 370, 376 (¶27) (Miss. Ct. App. 2003). Our supreme court has held that "[a]ll the [*Albright*] factors are important, but the chancellor has the ultimate discretion to weigh the evidence the way he sees fit." *Johnson v. Gray*, 859 So. 2d 1006, 1013-14 (¶36) (Miss. 2003). "The chancellor, by [her] presence in the courtroom, is best equipped to listen to witnesses, observe their demeanor, and determine the credibility of the witnesses and what weight ought to be ascribed to the evidence given by those witnesses." *Mabus v. Mabus*, 890 So. 2d 806, 819 (¶56) (Miss. 2003) (citing *Rogers v. Morin*, 791 So. 2d 815, 826 (Miss. 2001)). "In order to determine whether or not the chancellor was manifestly wrong [or] clearly erroneous[,] or abused [her] discretion in applying the *Albright* factors, we review the evidence and testimony presented at trial . . . to ensure [her] ruling was supported by the record." *Hollon v. Hollon*, 784 So. 2d 943, 947 (¶13) (Miss. 2001).

### a. Age, Health, and Sex of the Child

¶17. The chancellor found this factor to be neutral. She based her decision on the fact that A.P. was a five-year-old boy in good health. This Court finds no clear error or abuse of discretion in the chancellor's finding.

### b. Continuity of Care Prior to Separation

¶18. The chancellor found this factor slightly favored Dervin. She based her decision on the fact that A.P. was with both parents before 2019 and only recently had moved to Hattiesburg with Dervin. This Court finds no clear error or abuse of discretion in the chancellor's finding as to this factor.

### c. Parenting Skills

8

¶19. The chancellor also found this factor to be neutral. She noted that there was little testimony regarding "true parenting skills," but she drew conclusions from the parents' testimony. Based on their testimony, the chancellor determined both parents had good parenting skills. She based her decision in part on the fact that neither parent negatively criticized the other's parenting skills. Finally, the chancellor stated that the evidence showed both parents had extended family willing to assist them and that both parents were willing to care for the child. This Court finds no clear error or abuse of discretion in the chancellor's finding on this factor.

### d. Emotional Ties of Parent and Child

¶20. The chancellor found this factor slightly favored Ebony. She found that A.P. had bonded with both parents and sets of siblings but that he was more bonded with Ebony's children since they lived with him prior to the separation and still lived with Ebony in South Carolina. This Court finds no clear error or abuse of discretion in the chancellor's finding on this factor.

### e. Moral Fitness of the Parents

¶21. The chancellor found this factor to be neutral. Specifically, the chancellor stated none of the testimony or evidence presented gave her concern about either parties' moral fitness. Indeed, the records shows that neither parent provided negative testimony to the other parent's moral fitness. Thus, this Court finds no clear error or abuse of discretion in the chancellor's finding on this factor.

### f. Home, School, and Community Record of the Child

¶22. The chancellor found this factor favored Dervin. At the time of trial, A.P. was five years old and had lived with Dervin in Hattiesburg since February 2019. A.P. attended a preschool in Hattiesburg on Tuesdays, Thursdays, and Fridays and participated virtual learning at Pearl River Valley Opportunity Head Start on Mondays and Wednesdays. In addition, A.P. was classified as an "early emergent reader" through literacy testing. After review, this Court finds no clear error or abuse of discretion in the chancellor's finding on this factor.

### g. Stability of Home and Employment of Each Parent

¶23. The chancellor found this factor favored Ebony. The chancellor reasoned that although both parents were employed, Ebony's full-time employment was more stable. The chancellor's reasoning is supported by the record; Dervin essentially testified that his job was not guaranteed. After review, we find no clear error or abuse of discretion in the chancellor's finding on this factor.

### h. Other Relevant Factors

¶24. Finally, the chancellor considered other factors, including Dervin's lack of involvement with his two older children from 2014 to 2019. The Court noted that Dervin had large gaps of contact and visitation with those children and that his younger daughter was eight or nine years old in 2014, which meant her father missed a "significant time period" in her life. The chancellor was also concerned with why Dervin would sometimes ask Ebony for gas money when they would meet to exchange A.P. when his Rule 8.05 financial statement showed he had $1,000 in excess each month. The chancellor also questioned

10

whether Ebony was being truthful when she said she planned to return to Georgia after her move to South Carolina. The chancellor also expressed concern for the lack of gifts Ebony sent A.P. for during his birthday and Christmas after he moved to Hattiesburg.[6]

¶25. The dissent raises an issue that was not raised by the parties. Specifically, the dissent argues the chancellor conducted a "skeletal outline" in her *Albright* analysis. In support of its argument, the dissent quotes from the chancellor's written final judgment where she listed the *Albright* factors she considered and gave just the outcome of her analysis as to each factor. The dissent dismisses the fact that the chancellor issued a bench ruling after receipt of the testimony in which she conducted an *Albright* analysis. In doing so, she discussed and weighed the evidence as to each *Albright* factor she considered, but she did fail to mention two factors.

¶26. The dissent complains that the majority "strains to salvage the trial court's decision by arguing that the chancellor issued a bench ruling in which she performed an *Albright* analysis." The dissent also complains that this Court should not have to "comb the record" to locate that analysis and it should also be included in the written final order. It is of little avail to assert an appellate court should not have to "comb" an appellate record on appeal, as we do that as a matter of duty in every case before this Court. It would place form over substance to suggest we should reverse this case because the chancellor spoke her factual *Albright* analysis instead of writing it out word for word, especially when the written final order accurately summarized the oral bench ruling.

---

[6] We do not consider the preference of the child in this case because he is not old enough.

11

¶27. The real objection by the dissent is that the chancellor failed to specifically consider each factor in her written order or on the record. The parties' employment was discussed under the factor of stability of employment, as stated by the chancellor during her bench ruling:

> Mr. Polk has been employed with Manfinders (sic) at Kohler since May of 2020. I understand from Ms. Polk's testimony that she's been employed as a CNA perhaps not at the same facility but for a number of years, and I find that the stability of the employment with full-time employment and not through a temporary agency favors Ms. Polk.

Additionally, both parties testified as to their responsibilities of employment. The record shows that Dervin testified that his job was "seasonal" and not guaranteed. He also testified that his weekly work hours were from 3:30 p.m. to 1 a.m. and that he sometimes worked the same shift on weekends. Ebony testified that she worked as a certified nursing assistant and that she regularly worked from 8 a.m. to 3 p.m. during the week. The chancellor failed to specifically discuss the "responsibilities" of employment but certainly considered the parties' employment when she discussed the factor of "stability" of employment.

¶28. The second factor not specifically addressed—the physical and mental health and age of the parents—is comprised of two parts. Each party testified regarding both parts. Dervin testified he was forty-five years old, and Ebony testified that she was thirty-four years old. As for the parties' health, Dervin testified that he was in "good health" and had no medical issues or health problems, and Ebony testified that her health was "pretty much good" and that she had "a little anxiety." It would be judicially inefficient to reverse and order the chancellor to say what the evidence as to this factor clearly showed. The chancellor's failure

to discuss the parties' age and health did not cause an erroneous custody result because substantial credible evidence in the record supported the custody decision.

¶29.    As previously stated, an *Albright* analysis is not a mathematical formula. *Lee*, 798 So. 2d at 1288 (¶15); *see also* Deborah H. Bell, *Bell on Mississippi Family Law* § 12.03, at 383 (3d ed. 2020) ("[A] parent who 'wins' on more factors is not necessarily entitled to custody.")  It is well settled that in a custody case, "the chancellor has the ultimate discretion to weigh the evidence the way [she] sees fit." *Johnson*, 859 So. 2d at 1013-14 (¶36).  In this case, the chancellor stated that she "considered the testimony, evidence, credibility of witnesses, and [] the *Albright* factors" in awarding custody to Ebony.  It is "preferable" for a chancellor to make specific findings of fact on each *Albright* factor, but a chancellor's failure to do so does not **automatically** amount to reversible error.  For example, in *Murphy v. Murphy*, 797 So. 2d 325, 330 (¶¶18-19) (Miss. Ct. App. 2001), this Court upheld a chancellor's custody award even though the chancellor "did not make specific findings on all of the *Albright* factors."  This Court specifically stated that "[t]he chancellor's failure to make precise findings is not especially significant if we can with confidence state that she considered the proper factors."  *Id*. at (¶19).  In affirming the chancellor's decision, this Court also relied on the Mississippi Supreme Court's decision in *Sobieske v. Preslar*, 755 So. 2d 410, 412 (¶4) (Miss. 2000), which affirmed a chancellor's custody award even though he "did not expressly make any findings in his ruling as to the *Albright* factors."  *Id*. at (¶18); *see also Torrence v. Moore*, 455 So. 2d 778, 780 (Miss. 1984) (affirming a chancellor's custody award even though the chancellor discussed only some of the *Albright* factors).

13

Specifically, the supreme court stated, "While it certainly would have been preferable for the [c]hancellor to have expressly considered each *Albright* factor, it is perhaps understandable that he did not do so in the present case, given that the testimony established that both [parents] were fit and loving parents." *Sobieske*, 755 So. 2d at 412 (¶4).

¶30. Similarly here, the testimony showed that Ebony and Dervin were relatively close in age and in good physical and mental health. In addition, as previously stated, the parties testified regarding their employment, and the chancellor "considered the testimony, evidence, [and] the credibility of the witnesses" as part of her *Albright* analysis, as stated in her written order. In her *Albright* analysis, the chancellor discussed the parties' employment under the factor of stability of employment. After review, this Court finds the chancellor's custody decision is supported by substantial credible evidence.

## 2. Visitation

¶31. Dervin also argues that the chancellor's visitation award was "unduly harsh and punitive." He further claims that court "dramatically shifted the parties' responsibility as to costs" after August 1, 2021. The chancery court's visitation guidelines are listed below:

> The Court finds that after August 1, 2021, holiday visitation exchanges shall continue to occur in Anniston, [Alabama,] at 1:00 p.m. as follows:
>
> Thanksgiving, Spring Break, and Fall Break: Dervin shall have visitation with the minor child every thanksgiving holiday, every spring break holiday, and every fall break holiday (if the school offers a fall break). Visitation for these holiday and school breaks shall begin the Saturday after the minor child releases from school until the Saturday before the minor child has to return back to school.
>
> Christmas: Dervin shall have visitation with the minor child from December 24-January 1 in odd numbered years (2021, 2023, 2025, etc.) and Christmas

14

visitation from December 26-January 1 in even numbered years (2020, 2024, 2026, etc.).

Summer: Dervin shall have visitation with the minor child each summer beginning the [second] Saturday after school dismisses for a period of 14 days. Then Ebony shall have a seven (7) day visitation period with the minor child. At the conclusion of Ebony's seven day visitation period then Dervin shall have visitation until the last Saturday of July or the last Saturday before school resumes whichever occurs first.

Weekend Visitation: Dervin is granted visitation with the minor child one weekend a month in South Carolina. Dervin must notify Ebony 1 week in advance of his intention to visit the minor child in South Carolina. Dervin is solely responsible for transportation and lodging during this weekend visitation.

Telephone Visitation: Dervin may have telephone visitation with the minor child at all reasonable times. In the event that the parties cannot agree upon what "reasonable times" mean then Dervin shall have telephone visitation Tuesday, Thursday, and Sunday from 6:00 p.m. [to] 6:30 p.m. . . .

First and foremost, Dervin cites no legal authority to support his argument that the chancellor abused her discretion in ordering the visitation schedule listed above. "The Mississippi Supreme Court has held that it is the duty of the appellant to provide authority in support of an assignment of error." *Young v. State*, 919 So. 2d 1047, 1049 (¶5) (Miss. Ct. App. 2005) (citing *Hoops v. State*, 681 So. 2d 521, 526 (Miss 1996), *abrogated on other grounds by Willis v. State*, 300 So. 3d 999, 1009 (¶¶30-31) (Miss. 2020)). "Failure to cite legal authority in support of an issue is a procedural bar on appeal." *Id*.

¶32.    Even so, it is well established that chancellors have broad discretion in awarding child visitation. *See Harrington v. Harrington*, 648 So. 2d 543, 545 (Miss. 1994). "When the chancellor determines visitation, [she] must keep the best interest of the child as [her] paramount concern while always being attentive to the rights of the non-custodial parent,

15

recognizing the need to maintain a healthy, loving relationship between the non-custodial parent and his child." *Id.* (citing *White v. Thompson*, 569 So. 2d 1181 (Miss. 1990)). Here, prior to Ebony's award of custody on August 1, 2021, each party exercised visitation rights as specified by the chancellor, and each party was responsible for his or her costs regarding transportation and visitation. After August 1, 2021, the chancellor provided Dervin with liberal visitation rights, including in person and by telephone. Specifically, the chancellor awarded Dervin visitation for every holiday, one weekend per month, and a large portion of visitation during every summer. As for telephone visitation, the court allowed Dervin at least three thirty-minute sessions per week. The only financial increase for Dervin pertaining to the post August 1, 2021 visitation schedule is that he will be responsible for his transportation and lodging during his weekend visitation in South Carolina, which seems reasonable and not "unduly harsh or punitive." After review, this Court finds no abuse of discretion in the chancellor's visitation schedule.

## CONCLUSION

¶33. In summary, the chancellor's *Albright* analysis and her visitation award were neither clearly erroneous nor an abuse of discretion and were supported by substantial credible evidence produced at trial. Therefore, we affirm the chancery court's judgment.

¶34. **AFFIRMED.**

**BARNES, C.J., CARLTON AND WILSON, P.JJ., GREENLEE, SMITH AND EMFINGER, JJ., CONCUR. WESTBROOKS AND McDONALD, JJ., CONCUR IN RESULT ONLY WITHOUT SEPARATE WRITTEN OPINION. McCARTY, J., DISSENTS WITH SEPARATE WRITTEN OPINION, JOINED IN PART BY WESTBROOKS, J.**

16

**McCARTY, J., DISSENTING:**

¶35. In child custody cases the trial court is required to apply the *Albright* factors. The chancellor's final judgment simply did not fulfill this bedrock duty. Factor after factor is missing crucial information to accurately reflect the facts and to support the chancellor's decision—and in many cases lacks information completely. Certain factors significant to this case were not analyzed on the record, and as a result, we cannot review the factual conclusions of those missing factors.

¶36. "[T]he chancellor is *required* to address each of the *Albright* factors that is applicable to the case[.]" *Robles v. Gonzalez*, 246 So. 3d 945, 950 (¶21) (Miss. Ct. App. 2018) (emphasis added). "A determination of child custody will be held erroneous where a chancellor is not thorough in his discussion of the *Albright* factors." *Id*. (internal quotation mark omitted). "A chancellor is required to make findings of fact with regard to each *Albright* factor." Deborah H. Bell, *Bell on Mississippi Family Law* § 12.03[1], at 383 (3d ed. 2020). "Failure to make the required findings is one of the most common reasons for reversal of a custody award." *Id*.

¶37. In case after case, the Supreme Court and this Court have reversed for failure to properly apply the *Albright* factors. When a chancellor only discussed two of the *Albright* factors, the Supreme Court determined this was insufficient and reversed and remanded for further findings. *Powell v. Ayars*, 792 So. 2d 240, 244-45 (¶11) (Miss. 2001).

¶38. Similarly, we have reversed an *Albright* determination that lacked the factors of the emotional ties between the child and parent and the age and sex of the child, and the trial

17

court decision stated some factors favored the father without explaining why. *Fulk v. Fulk*, 827 So. 2d 736, 740 (¶13) (Miss. Ct. App. 2002); *see also Parra v. Parra*, 65 So. 3d 872, 876 (¶12) (Miss. Ct. App. 2011) (reversing for failure to make *Albright* findings of fact); *Franklin v. Franklin*, 864 So. 2d 970, 981-82 (¶57) (Miss. Ct. App. 2003) (reversing and remanding chancellor's failure to make any findings *at all* upon *Albright* factors when determining custody); *Formigoni v. Formigoni*, 733 So. 2d 868, 871 (¶10) (Miss. Ct. App. 1999) (reversing due to chancellor's failure to consider *Albright* factors in rendering child custody decision); *Hamilton v. Hamilton*, 755 So. 2d 528, 530-31 (¶10) (Miss. Ct. App. 1999) (reversing for chancellor's failure to consider each of the *Albright* factors in both his oral statement and written order).

¶39.     We explained in *Fulk* why a full explanation of *Albright* is so critical: "[o]ur job, as an appellate court, is to review the chancellor's decision and determine if it was 'manifestly erroneous based on a proper analysis of each of the applicable *Albright* factors.'" *Fulk*, 827 So. 2d at 740 (¶13) (quoting *Powell v. Ayars*, 792 So. 2d 240, 244 (¶10) (Miss. 2001)). "This task becomes futile when chancellors fail to consider and discuss each factor when rendering decisions." *Id*.

¶40.     The entirety of the chancellor's application of *Albright* is just a skeletal outline. It contains slots to perform an *Albright* analysis—but no actual examination. The following is a direct quote from the final judgment:

> a. Age, Health and sex of the child – neutral
> b. Continuity of Care – slightly favors Dervin Polk
> c. Parenting skills – neutral
> d. Willingness and Capacity to provide child care – neutral

18

e. Emotional Ties of the child and parent – slightly favors Ebony Polk due to the presence of siblings in her home

f. Moral fitness of the parents – neutral

g. Home/school and community record – favors Dervin Polk due to being in Hattiesburg since February 2019.

h. Preference of the child – not applicable

[i]. Stability of the home – favors Ebony Polk as she has her own residence and her other children reside with her while Dervin Polk continues to reside with his father and his father's girlfriend

j. Stability of Employment – favors Ebony Polk has maintained fulltime employment while Dervin Polk's employment is through a temporary job placement company

In accordance with *Powell*, *Fulk*, *Parra*, *Franklin*, *Formigoni*, and *Hamilton*, this outline simply does not meet the requirements of *Albright*. So we must reverse and remand.

¶41. The majority strains to salvage the trial court's decision by arguing that the chancellor issued a bench ruling in which she performed an *Albright* analysis. However, "[a] chancellor's bench ruling is not final, but is subject to modification by that same chancellor." *Grey v. Grey*, 638 So. 2d 488, 492 (Miss. 1994). "The chancellor's decision is not the same thing as the court's final judgment." *Id*. Also, "[w]e note that the best practice for all trial-level courts is to transform all bench rulings into written orders." *Gilmer v. Gilmer*, 297 So. 3d 324, 341 (¶62) (Miss. Ct. App. 2020). And finally, "[a]n appellate court is not required to 'scour the record' to find support for factual assertions in a brief." Deborah H. Bell, *Bell on Mississippi Family Law* § 19.12[7][d], at 746 (3d ed. 2020).

¶42. Under the majority's rationale, the role of the appellate courts would be to comb the record to determine what the chancellor was thinking in order to examine whether *Albright* was followed. This is not the rule, nor should it be. The critical nature of *Albright*—that is, to ascertain what is in the best interests for the child—means that the chancellor's ultimate

19

conclusions must be contained in the written final order. When that is not done, the best route is to reverse and remand so that the trial court complies with the Supreme Court's precedent, at which point we can fulfill our role by reviewing the decision. Just because the chancellor merely *heard* testimony does not equate to a sufficient *Albright* analysis significant enough that the trial court was able to evaluate and consider the factual conclusions that would ultimately determine the future of this child.[7] As we cautioned in *Fulk*, our task today has become "futile" because the trial court "fail[ed] to consider and discuss each factor when rendering" the final judgment in this case. *Fulk*, 827 So. 2d at 740 (¶13).

¶43.    Ultimately, the chancellor awarded Ebony physical custody of A.P. and ordered both parents to share legal custody. As a result, the chancellor allowed the five-year-old boy to be shipped off to live with his mother in South Carolina—just shy of 700 miles away from the home he had shared with his father in Hattiesburg for almost two years. There is simply not enough information in the chancellor's final judgment to affirm. Accordingly, I respectfully dissent.

**WESTBROOKS, J., JOINS THIS OPINION IN PART.**

---

[7] Oddly, the catch-all "other" factor is discussed in detail—while the ten other factors that are required and expected to be explained are left insubstantial and arguably nonexistent.

20